**E-FILED on**   2/27/07

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| NEIL B. GOLDBERG,<br><br>        Plaintiff,<br><br>    v.<br><br>JAMES CAMERON, GALE ANN HURD, et al.<br><br>        Defendants. | No. C-05-03534 RMW<br><br>ORDER RE: DEFENDANTS' MOTIONS TO DISMISS<br><br>**[Re Docket Nos. 25, 27, 28]** |

    In August 2005, plaintiff Neil Goldberg, a resident of Santa Cruz, California, filed suit against defendants James Cameron and Gale Ann Hurd, two individuals who reside in Los Angeles, California. According to Goldberg, Cameron and Hurd, allegedly misappropriated plaintiff's copyrighted works and used them in all three movies of the *Terminator* trilogy. Goldberg seeks (1) an injunction and damages for copyright infringement; (2) return of all benefits under a theory of conversion; (3) recovery for breach of implied contract; (4) an injunction and damages under Cal. Bus. & Prof. Code § 17200; (5) an accounting; and (6) declaratory relief. Cameron and Hurd have each filed motions to dismiss for improper venue or, in the alternative, transfer of venue. Each defendant also moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) in the event the court declines to dismiss or transfer on the basis of venue.

ORDER RE: DEFENDANTS' MOTIONS TO DISMISS—No. C-05-03534 RMW
MAG

# I. BACKGROUND

Plaintiff is the holder of a registered copyright to a movie script entitled "Long Live Music."[1] Plaintiff was issued a certificate of registration, No. Pau 175-490 on November 4, 1979 for the work. (1st Am. Compl. ¶¶ 7, 10.) In and around 1979, plaintiff circulated "Long Live Music" to a select number of potential producers, including in his promotional package a cassette tape and 33-1/3 album of a proposed soundtrack, entitled "Energy," to be included in the proposed motion picture production. (1st Am. Compl. ¶ 8.) That proposed soundtrack included an individual track entitled "Heavy Light," that is also copyrighted material owned by plaintiff. (*Id.*)

One of the potential producers to which plaintiff asserts that he sent his promotional package was New World Pictures. (*Id.*) Cameron and Hurd, both individuals, allegedly both worked at New World Pictures at the time. (*Id.*) In 1981 and 1982, Cameron and Hurd allegedly began promoting, producing, filming and marketing *The Terminator*, the popular movie starring Arnold Schwarzenegger and Linda Hamilton. (1st Am. Compl. ¶ 11.) *The Terminator* had its theatrical release in 1984, followed by *Terminator 2: Judgment Day* in 1991 and *The Terminator 3: Rise of the Machines* in 2003.[2] Cameron received producer and writer credit on *The Terminator* and *Terminator 2* but was not given such credit on *Terminator 3*; Hurd received writer credit on *The Terminator* and the *Terminator 2* and (although she claims she was no longer involved in the project) received executive producer credit on *Terminator 3*.

Plaintiff's complaint alleges that *The Terminator* and its sequels somehow infringe plaintiff's copyrighted work. (*Id.* ¶¶ 9, 11,-12). He implies that these movies are based upon his "Long Live Music" script and that they incorporate portions of his "Heavy Light" soundtrack. He also contends that defendants recalled all *Terminator* movies from consumer outlets and remixed the soundtrack "to conceal the true source of the illegally infringed copyrights [sic] material." (*Id.* ¶ 11.) Plaintiff's oppositions to defendants' motions provides a more concrete description of the alleged infringement.

---

[1] Plaintiff also refers to this work as "Music Warrior." (1st Am. Compl. ¶ 6.)

[2] Plaintiff acknowledges the 1984 release date of *The Terminator* in his complaint, although he does not set forth the release dates of the other two sequels therein. *See* 1st Am. Compl. ¶ 14 ("From the time when the original *Terminator* movies was first introduced to the marketplace, e.g., on or about 1984..."); *see also id.* ¶ 12

**United States District Court**
For the Northern District of California

1  He sets forth the following partial list of similarities between "Long Live Music" work and the
2  *Terminator* movies: (1) Both involve a plan by supercomputers to take over the world far in the
3  future; (2) the supercomputers in both determine on their own that mankind is harming the
4  environment and use man's nuclear weapons against him; (3) both involve a supercomputer-
5  developed army of underground robots designed to destroy mankind; (4) both involve time travel
6  from the future to the past; and (5) the time travel is performed by a central protagonist. Plf.'s Opp'n
7  to Defs.' Mots. to Dismiss or Transfer Venue at 4. He also argues that the soundtracks of the
8  *Terminator* movies and plaintiff's soundtrack "are so similar that when listening to the two one is
9  easily confused as to which is which." *Id.*

10  Plaintiff did not file his complaint until August 31, 2005 and did not effect service until
11  2006. Although he alleges that the "secret conspiracy between defendant's [sic] Cameron and Hurd"
12  allegedly began in or around 1981 and 1982 (1st Am. Compl. ¶¶ 9, 11), plaintiff states that he was
13  unaware that any copyright infringement of the work had occurred until within three years of filing
14  his complaint because he "had embarked upon a spiritual Yoga path wherein [he] was not only
15  removed from, and [sic] shunned, all forms of electronic media and, most certainly, any media and
16  actual exposure to the Terminator movies" (1st Am. Compl. ¶ 14).

## II. ANALYSIS

**A.     Cameron and Hurd's Motions to Dismiss for Improper Venue or Transfer**

**1.     Venue**

20  The venue of suits for infringement of copyright is not determined by the general provision
21  governing suits in the federal district courts, rather by the venue provision of the Copyright Act. 28
22  U.S.C. § 1400(a); *Lumiere v. Mae Edna Wilder, Inc.*, 261 U.S. 174, 176 (1923). 28 U.S.C. §
23  1400(a) provides that "[c]ivil actions, suits, or proceedings arising under any Act of Congress
24  relating to copyrights or exclusive rights in mask works or designs may be instituted in the district in
25  which the defendant or his agent resides or may be found." 28 U.S.C. § 1400(a). The Ninth Circuit
26  has interpreted the statute to mean that venue "is proper in any judicial district in which the
27  defendant would be amenable to personal jurisdiction if the district were a separate state." *Columbia*
28  *Pictures Television v. Krypton Broadcasting of Birmingham, Inc.*, 106 F.3d 284, 288 (9th Cir. 1997),

*overruled on other grounds by Feltner v. Columbia Pictures Television*, 523 U.S. 340 (1998); *see also VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, 1583 (Fed. Cir. 1990) (venue is proper in any district in which there is personal jurisdiction over the defendant).

"The court uses basically the same procedure to decide a motion to dismiss for improper venue as it does for deciding a motion to dismiss for lack of personal jurisdiction." *Hudye Soil Services, Inc. v. Tyler*, 46 F. Supp. 2d 1157, 1161 (D. Kan. 1999). Where, as here, the motion to dismiss is based on written materials rather than an evidentiary hearing, Goldberg need only make a prima facie showing to demonstrate that the Northern District of California has personal jurisdiction over Cameron and Hurd. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).

### a.     General Jurisdiction

The Ninth Circuit sets forth the test for general jurisdiction as follows:

> For general jurisdiction to exist over a nonresident defendant . . . , the defendant must engage in "continuous and systematic general business contacts" that "approximate  physical presence" in the forum state. This is an exacting standard, as it should be, because a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world.

*Id.* at 801 (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 318 (1945)). General jurisdiction does not exist absent a showing of pervasive contacts. *See, e.g., Gator.com. Corp v. L.L. Bean, Inc.*, 341 F.3d 1072, 1075-77 (9th Cir. 2003) (general jurisdiction requires an "approximation of physical presence"); *Amoco Egypt Oil Co. v. Leonis Navigation Co.*, 1 F.3d 848, 851 n.3 (9th Cir. 1993) (noting courts have "regularly declined to find general jurisdiction even where the contacts were quite extensive"). "Factors to be taken into consideration are whether the defendant makes sales, solicits or engages in business in the state, serves the state's markets, designates an agent for service of process, holds a license, or is incorporated there." *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000).

Goldberg offers no evidence demonstrating that Cameron or Hurd, as individuals, make sales, solicit or engage in business, or otherwise serve the markets in the Northern District of California. There is no evidence they engage in "continuous and systematic general business

contacts" in this district. Accordingly, the court finds that Goldberg has not made a prima facie showing of general jurisdiction.

### b.   Specific Jurisdiction

The Ninth Circuit has articulated the following three-prong test for analyzing a claim of specific jurisdiction:

> (1) The non-resident defendant must purposefully direct activities or consummate some transaction with the forum or resident thereof; or perform some act which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protection of its laws;
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
> (3) the exercise of jurisdiction must comport with fair play and substantial justice.

*Schwarzenegger*, 374 F.3d at 802.

### i.   Purposeful Availment

Under the first prong of the specific jurisdiction test, Goldberg must establish that Cameron and Hurd either purposefully availed themselves of the privilege of conducting activities in the Northern District of California, or purposefully directed their activities toward the Northern District of California. *See id.* "A purposeful availment analysis is most often used in suits sounding in contract. A purposeful direction analysis, on the other hand, is most often used in suits sounding in tort." *Id.* A claim for copyright infringement sounds in tort, and therefore a purposeful direction analysis is appropriate. *See, e.g., IO Group, Inc. v. Pivotal, Inc.*, U.S. Dist. LEXIS 6673 at *17 (N.D. Cal. Apr. 19, 2004) (Patel, J.) ("Copyright infringement may be characterized as an intentional tort.").

In analyzing purposeful direction, a court applies the Supreme Court's "effects" test from *Calder v. Jones*, 465 U.S. 783 (1983). *See Schwarzenegger*, 374 F.3d at 803. Under *Calder*, the defendant must have (1) committed an intentional act, which was (2) expressly aimed at the forum state (or, in this case, the Northern District of California), and (3) caused harm, the brunt of which is suffered and which the defendant knows is likely to be suffered in the forum state. *Panavision Int'l L.P. v. Toeppen*, 141 F.3d 1316, 1321-22 (9th Cir. 1998).

ORDER RE: DEFENDANTS' MOTIONS TO DISMISS—No. C-05-03534 RMW
MAG                                                                   5

In *Columbia Pictures*, the Ninth Circuit found that the effects test is satisfied in a copyright infringement action in which the plaintiff brings suit in the forum where the plaintiff resides, and the defendant knows that the plaintiff resides there. *See Columbia Pictures*, 106 F.3d at 284. The Ninth Circuit cited *Calder* in finding that the purposeful availment requirement of the specific jurisdiction test was satisfied by the fact that the defendant had willfully infringed copyrights owned by the plaintiff, which, as the defendant knew, had its principal place of business in the forum district. *Id.* at 289.

Here, plaintiff has made a prima facie showing (albeit an extremely weak one) that Cameron and Hurd willfully infringed copyrights owned by Goldberg.  However, intentional conduct is not alone sufficient – the intentional conduct "must be targeted at a plaintiff whom the defendant knows to be a resident of the forum state." *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000).  Plaintiff has not, however, alleged that defendants knew Goldberg's principal place of business was in the Northern District of California, stating only that they worked at New World Pictures at the time Goldberg submitted his works to that company.  1st Am. Compl. ¶ 8. Even viewing the allegations in the light most favorable to the plaintiff for purposes of the present motion, this is not sufficient to establish that defendants knew Goldberg was located in the Northern District of California

Goldberg argues that the damage to intellectual property is determinative of where the alleged infringer is subject to personal jurisdiction and that copyright infringement necessarily occurs at the point of consumer purchase.  Plf.'s Opp'n to Defs.' Mots. to Dismiss or Transfer Venue at 9.  This is not a correct statement of the law.  The question relates to purposeful availment, specifically whether defendants have engaged in activity that would qualify as directed toward the Northern District of California and whether from such direction the court can infer that defendants knew the brunt of the harm would be sustained here.  Defendants allegedly acted in Los Angeles to co-write and produce *The Terminator* and its sequels.  These actions were intended to result in a movie that was to be released and distributed worldwide, which would most certainly include the Northern District of California.  Other California district courts have concluded that conduct that the defendant knew would result in significant harm in California would be sufficient to subject the

defendant to personal jurisdiction in California.  *See, e.g., Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 243 F. Supp. 2d 1073, 1090 (C.D. Cal. 2003) ("Plaintiffs have alleged that Sharman intentionally and materially contributed to the infringement of Plaintiffs' works, and that it did so with full knowledge that much of the harm from this infringement would be suffered in California. This is sufficient to establish a prima facie case of purposeful availment under the effects test of *Panavision*.").

*Schwarzenegger*, a recent Ninth Circuit opinion, supports the argument that effects/purposeful direction test has been satisfied. In *Schwarzenegger*, Arnold Schwarzenegger filed suit in California against an Ohio car dealership for the unauthorized use of his photograph in its advertisements (appropriately for this case, for playing upon this role in the *Terminator* movies). The Ninth Circuit concluded that the federal court in California did not have specific jurisdiction over the Ohio dealership because, under the effects test, it could not be said that the dealership had purposefully directed its actions at California consumers because the dealership's advertisements were targeted solely at Ohio consumers.  Because the Ohio dealership "had no reason to believe that any Californians would see [the misappropriated images]," the mere fact that Mr. Schwarzenegger lived in California did not confer jurisdiction where the "express aim is local."  *Schwarzenegger*, 374 F.3d at 807.

The aim of defendants' actions here is distinguishable from that in *Schwarzenegger*. Although defendants argue that their conduct in co-authoring and producing the *Terminator* movies was limited to the local Los Angeles area, given the presumed goal of creating a worldwide blockbuster starring a well-known action figure, the express aim of the alleged copyright infringement would be more than local and would necessarily reach other districts in California. Thus, the alleged willful conduct together with the knowledge that the allegedly misappropriated material would at least impact all of California, including this district, which impact would have likely produced benefit to the defendants makes this a stronger case for purposeful availment than in *Schwarzenegger*.

ORDER RE: DEFENDANTS' MOTIONS TO DISMISS—No. C-05-03534 RMW
MAG                                                                                          7

### ii. Arising Out Of

The second prong of the test for specific jurisdiction requires that the claim against the defendant be one which arises out of or relates to the defendant's forum-related activities. This is "measured in terms of but for causation." *Bancroft*, 223 F.3d at 1088, *see also Panavision*, 141 F.3d at 1322 ("We must determine if the plaintiff. . . . would not have been injured but for the defendant's . . . conduct directed toward [plaintiff] in [the forum]."). Here, but for defendants' alleged copyright infringement, which reached into this district and allegedly affected plaintiff in this district, plaintiff's claim would not have arisen.

### iii. Fair Play and Substantial Justice

Finally, the third prong of the test for specific jurisdiction provides that the exercise of personal jurisdiction must comport with fair play and substantial justice. The court considers the following seven factors:

> (1) the extent of the defendants' purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. None of the factors is dispositive in itself; instead, [the court] must balance all seven.

*Core-Vent Corp. v. Nobel Industries*, 11 F.3d 1482, 1487-88 (9th Cir. 1993). Jurisdiction is presumed to be reasonable once the first two prongs of the specific jurisdiction test have been met. *See Schwarzenegger*, 374 F.3d at 802. Defendants argue that exercise of personal jurisdiction by this court would be unreasonable. The court disagrees.

The degree of interjection is more than minimal here. Defendants have interjected themselves into this forum by virtue of profiting from the sale of the blockbuster movie they authored, both from original releases and from subsequent DVD and other merchandising sales. Further, the other factors weigh against defendants, supporting the reasonableness of jurisdiction in the Northern District of California. The law of the fora is the same. There would be little burden on defendants if they were to litigate the case in this district rather than the Central District of California. It appears that relevant documents and witnesses may be found in both districts. Travel

between Los Angeles and San Jose is not especially inconvenient. Thus, the court concludes that the exercise of personal jurisdiction sufficiently comports with substantial justice and fair play.

### B. Defendants' Motions to Transfer

Defendants assert that even if venue is proper under § 1400(a) the case should be transferred pursuant to 28 U.S.C. § 1404(a), which provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Factors that may be considered include:

> (1) plaintiff's choice of forum, (2) convenience of the parties, (3) convenience of the witnesses, (4) ease of access to the evidence, (5) familiarity of each forum with the applicable law, (6) feasibility of consolidation of other claims, (7) any local interest in the controversy, and (8) the relative court congestion and time of trial in each forum.

*Williams v. Bowman*, 157 F. Supp. 2d 1103, 1106 (N.D. Cal. 2001). Many of these factors are the same as those listed above for the third prong of the specific jurisdiction test, and, for similar reasons, the court concludes that defendants have not met the burden of showing that a transfer to another venue is appropriate. *See Hoffman v. Blaski*, 363 U.S. 335, 366 (1960) ("[T]he defendant must satisfy a very substantial burden of demonstrating where justice and convenience lie, in order to have his objection to a forum of hardship, in the particular situation, respected."). Accordingly, the court denies the defendants' motions to transfer.

### C. Defendants' Motions to Dismiss

Defendants alternatively move to dismiss plaintiff's claims. Hurd moves to dismiss plaintiff's copyright infringement and breach of implied contract claims as barred by the statute of limitations. She also moves to dismiss all of plaintiff's other claims against her as barred by the doctrine of laches. Cameron moves to dismiss plaintiff's breach of implied contract claim because it does not allege any contact or communication of any kind between plaintiff and Cameron. He also moves to dismiss plaintiff's second cause of action for conversion and fourth cause of action for violation of California Business and Professions Code section 17200 as preempted by the United States Copyright Act.

Dismissal under Federal Rule of Civil Procedure Rule 12(b)(6) is proper only when a complaint exhibits either a "lack of a cognizable legal theory or the absence of sufficient facts

ORDER RE: DEFENDANTS' MOTIONS TO DISMISS—No. C-05-03534 RMW
MAG                                                                                   9

alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988). The court must accept the facts alleged in the complaint as true. *Id.* "A complaint should not be dismissed 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 248 (9th Cir. 1997) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

### 1.      Copyright Claims

Hurd contends that plaintiff's copyright claims are barred by the three-year statute of limitations. Section 507(b) of the Copyright Act provides that copyright claims must be "commenced within three years after the claim accrued." 17 U.S.C. § 507(b). The original *Terminator* movie was released in 1984; the second was released in 1991; the third was released in 2003. Plaintiff filed this action on August 31, 2005, therefore, all claims that accrued prior to August 31, 2002 are time-barred under the Copyright Act.

A copyright claim accrues when a plaintiff knew or should have known that infringement had occurred. *Roley v. New World Pictures*, 19 F.3d. 479, 481 (9th Cir. 1994) ("A cause of action for copyright infringement accrues when one has knowledge of a violation or is chargeable with such knowledge."). Because each act of infringement is a distinct harm, the statute of limitations bars infringement claims that accrued more than three years before suit was filed, but does not preclude infringement claims that accrued within the statutory period. *Id.* In a case of continuing infringement, "an action may be brought for all acts that accrued within the three years preceding the filing of the suit." *Kourtis v. Cameron*, 419 F.3d 989, 999 (9th Cir. 2005) (citing *Roley* in the context of a suit against Cameron for copyright infringement in *Terminator 2*).

Plaintiff contends that he had no notice of the infringement prior to within three years of filing his complaint. His complaint does not specify when he learned of the alleged infringement (except that it was within three years of filing the complaint), only that he was unaware of the release of the *Terminator* movies and their potential connection to his works because of his twenty-year spiritual journey. (1st Am. Compl. ¶ 14.) Consequently, plaintiff argues, an issue of fact as to when he learned of the infringement precludes granting Hurd's motion to dismiss. Hurd, on the other hand, argues that plaintiff is chargeable with knowledge of infringement as of the date of the

ORDER RE: DEFENDANTS' MOTIONS TO DISMISS—No. C-05-03534 RMW
MAG                                                                 10

release of each of the *Terminator* movies, spiritual journey or otherwise, because he could have reasonably discovered the alleged infringement.

Because the complaint was not filed until August 31, 2005, plaintiff's action is time-barred unless his complaint would "allow for the possibility that [he] lacked actual knowledge of the alleged acts of infringement" on August 31, 2002 and "that lack of knowledge was reasonable under the circumstances." *In re Napster, Inc. Copyright Litigation*, 2005 WL 289977 at *3 (N.D. Cal. 2005) (Patel, J.) (citing *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 706 (9th Cir. 2004)). This inquiry is a question of fact. *Polar Bear Prods.*, 384 F.3d at 707.

Notwithstanding the factual nature of the inquiry, based on the facts alleged in the complaint, no reasonable finder of fact could conclude that plaintiff's asserted lack of knowledge of the alleged infringement was reasonable. As set forth above, plaintiff contends that the plot and premise of the *Terminator* movies are obvious derivations of his "Long Live Music" work. Plf.'s Opp'n to Defs.' Mots. to Dismiss or Transfer Venue at 4. Similarly, he asserts that the soundtracks of the *Terminator* movies and plaintiff's soundtrack "are so similar that when listening to the two one is easily confused as to which is which." *Id.* Plaintiff acknowledges *The Terminator*'s 1984 release date by alleging "that commencing on or about the year 1984 and continuing up to the present time, defendants ... infringed and converted the above-mentioned copyright by selling, distributing and marketing the motion picture 'Terminator . . . ." 1st Am. Compl. ¶ 12; *see also id.* ¶ 14. *The Terminator* movies have been exceedingly popular both domestically and abroad, so it is reasonable to infer that well prior to 2002, *The Terminator* was available overseas. Even attempting to eschew all electronic media, it is unreasonable to assert that plaintiff had zero exposure to *The Terminator* movie in the twenty-one years following its release (or, as regards *Terminator 2*, in the eleven years following its release). Following plaintiff's own arguments that the similarities are such that would be difficult to tell his and the accused works apart, practically any exposure would have reasonably resulted in actual knowledge of infringement. Plaintiff cannot deflect this reasonable conclusion by failing to plead the details of his spiritual journey.

Further, assuming that he truly lacked actual knowledge until within the three-year limitations period, that lack of knowledge is entirely unreasonable. Plaintiff alleges that he

circulated his movie script and soundtrack to a select number of producers, intending to seek their assistance in bringing the works to market. Plaintiff makes it clear that he is not a novice in this regard, arguing that he "is a successful song writer and producer in his own right." Plf.'s Opp'n to Defs.' Mots. to Dismiss or Transfer Venue at 2. It is unreasonable for a "successful song writer and producer" who shopped around a movie script and sound track to movie studios to commence a Yoga path only to reemerge from electronic isolation twenty years later and thereafter commence suit for copyright infringement. Seeking to avoid the three-year statute of limitations on the basis of such a vanishing act is unavailing. This self-imposed exile would lead the reasonable trier of fact to only one conclusion: that plaintiff's lack of actual knowledge was unreasonable under the circumstances, particularly in light of the alleged egregiousness of the infringement.

In addition to individual acts of copyright infringement, plaintiff's complaint alleges, however vaguely, acts of continuing infringement, such as the release of the *Terminator* movies on DVD, the release of video games based on the *Terminator* movies, and the use of plaintiff's works to develop *Terminator 3*, which released in 2003. Although Hurd argues that she is not a distributor or exhibitor and thus not subject to liability for continuing copyright infringement, this court disagrees. It remains to be determined to what extent, if any, the defendants may have liability for copyright infringement occurring after August 31, 2002. Thus, as in *Kourtis*, "[b]ecause the complaint does not identify the date on which the [plaintiff] discovered these acts of continuing infringement, it cannot be concluded that the [plaintiff's] claim is time-barred in its entirety. *Kourtis*, 419 F.3d at 999-1000 (citing *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 954 (9th Cir. 2001)).[3]

Plaintiff asserts that his allegation in the complaint that "the last act in [defendants'] fraudulent scheme" was the "recall and remix of the Terminator 1 sound track, which occurred within the three years of the underlying filing of this action" permits him to recover for all damages since the misappropriation began (sometime between 1979 and 1984) to the present date Plf.'s Opp'n to Defs.' Mots. to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) at 2. He contends that "these acts,

---

[3] The Ninth Circuit noted, as does this court, that "Cameron [and Hurd are] free, of course, to pursue the statute-of-limitations issue on summary judgment. *See Roley*, 19 F.3d at 482 (affirming a grant of summary judgment on statute-of-limitations grounds where the plaintiff's continuing infringement theory was premised upon "naked allegations and speculation")." *Kourtis*, 419 F.3d at 1000.

ORDER RE: DEFENDANTS' MOTIONS TO DISMISS—No. C-05-03534 RMW
MAG                                                            12

perpetrated within three years of the filing of this underlying action, would constitute . . . the last act in the fraudulent scheme against plaintiff . . . ; thereby retriggering any and all statutes of limitations on all causes of action." Plf.'s Opp'n to Defs.' Mots. to Dismiss or Transfer Venue at 6. Plaintiff cites to *Polar Bear* in support of his argument. However, *Polar Bear* expressly states that only if the plaintiff "was unaware of the infringement *and that lack of knowledge was reasonable under the circumstances,*" does the statute of limitations toll. 384 F.3d at 706. In light of the court's conclusion above that plaintiff's purported lack of knowledge was unreasonable, plaintiff is unable to assert his alleged copyright claims, continuing or otherwise, prior to August 31, 2002. To the extent that plaintiff's allegation seeks to invoke the doctrine of equitable tolling, this also fails. "The doctrine of equitable tolling, as it has been applied in copyright claims, has typically involved allegations of inequitable conduct by the defendant that prevented the plaintiff from discovering the infringement during the statutory period." *In re Napster*, 2005 WL 289977 at *5 (citing *Prather v. Neva Paperbacks, Inc.*, 446 F.2d 338, 340-41 (5th Cir. 1971) (applying common law equitable tolling doctrine to alleged fraudulent concealment of copyright infringement). For all of plaintiff's allegations of a "secret conspiracy," nothing in his complaint is amenable to the interpretation that the defendants' efforts could have reasonably concealed the origin of the *Terminator* movies or their soundtracks from the plaintiff prior to August 31, 2002.[4]

### 2.  Breach of Implied Contract Claim

Both defendants argue that plaintiff's breach of implied contract claim should be dismissed. Cameron contends that plaintiff has failed to allege all elements of a breach of implied contract claim; Hurd argues that plaintiff's claim is barred by the statute of limitations.

### a.  Failure to State a Claim

For an implied-in-fact contract, a plaintiff must show: "that he or she prepared the work; that he or she disclosed the work to the offeree for sale; under all circumstances attending disclosure it can be concluded that the offeree voluntarily accepted the disclosure knowing the conditions on

---

[4] Plaintiff's contention that all *Terminator* movies were remastered to remove the plaintiff's "Energy" soundtrack did not occur until within three years of the filing date according to his own pleading. This is the only act that might reasonably be considered a concealing act, since prior to the alleged remastering, the similarities between the plaintiff's soundtrack and the *Terminator* soundtracks would have been glaringly obvious according to plaintiff's own arguments.

ORDER RE: DEFENDANTS' MOTIONS TO DISMISS—No. C-05-03534 RMW
MAG                                                              13

1  which it was tendered (i.e., the offeree must have the opportunity to reject the attempted disclosure if
2  the conditions were unacceptable); and the reasonable value of the work." *Faris v. Enberg*, 97 Cal.
3  App. 3d 309, 318 (1979).  Cameron argues that plaintiff fails to state a claim for breach of implied
4  contract because plaintiff cannot allege that plaintiff ever disclosed the works in question to either of
5  the defendants.  While it is true that plaintiff does not allege that he disclosed his works directly to
6  Cameron and Hurd, plaintiff does allege that he disclosed his works to New World Pictures in or
7  around 1979, and that Hurd and Cameron were employed by New World Pictures at that time.  (1st
8  Am. Compl. ¶ 8.)  He also alleges that he expected compensation for his submission.  (*Id.*)
9  ("Plaintiff's purpose of transmitting the copyrighted material to New World Pictures was to engage a
10 contract for compensation for plaintiff's protected ideas.")  While this is by no means a compelling
11 allegation that the work was disclosed to the defendants in a manner that would create an implied
12 contract (particularly in light of plaintiff's arguments that Cameron was "essentially a cameraman"
13 and Hurd was "known to be working in the Production Department at New World Pictures," Plf.'s
14 Opp'n to Defs.' Mots. to Dismiss or Transfer Venue at 3) it is sufficient to state a claim for an
15 implied contract.  *See generally Davies v. Krasna*, 245 Cal. App. 2d 535 (1966) (the court found
16 sufficient evidence to warrant a trial on the claim of breach of confidence from the inference that one
17 business partner had access to a script submitted by plaintiff to another business partner).

### b.     Statute of Limitations

19 The plaintiff's breach of implied contract claim is subject to a two-year limitations period.
20 *Davies v. Krasna*, 14 Cal. 3d 502, 516 (1975) (breach of confidence cause of action subject to a
21 two-year statute of limitations); *Rokos v. Peck*, 182 Cal. App. 3d 604, 619 (1986) (breach of
22 confidence and breach of implied contract claims have identical statute of limitations period).
23 Plaintiff's claim accrued when he first suffered "appreciable and actual harm." *Davies*, 14 Cal. 3d at
24 535.  With respect to *The Terminator*, this could be no later than the date on which it was released in
25 1984; with respect to *Terminator 2*, this could be no later than the date on which it was released in
26 1991.  Plaintiff's breach of implied contract claim with respect to those two movies is therefore
27 untimely.  *Cf. Kourtis*, 419 F.3d at 1001.

### 3. Preemption

The Copyright Act expressly preempts "all legal and equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106." 17 U.S.C. § 301. The Ninth Circuit has applied the following two-prong test:

> A state law cause of action is preempted by the Copyright Act if two elements are present. First, the rights that a plaintiff asserts under state law must be "rights that are equivalent" to those protected by the Copyright Act. 17 U.S.C. § 301(a); Second, the work involved must fall within the "subject matter" of the Copyright Act as set forth in 17 U.S.C. §§ 102 and 103.

*Kodadek v. MTV Networks, Inc.*, 152 F.3d 1209, 1212 (9th Cir. 1998) (citing 1 Nimmer, § 1.01[B] at 1-11) (citations omitted).

Under the first prong of the preemption test, the court must determine whether a claim for breach of implied contract protects rights equivalent to those protected by the Copyright Act. "In order not to be equivalent, the right under state law must have an 'extra element' that 'changes the nature of the action so that it is qualitatively different from a copyright infringement claim." *Xerox Corp. v. Apple Computer, Inc.*, 734 F. Supp. 1542, 1550 (N.D. Cal. 1990) (quoting *Mayer v. Josiah Wedgwood and Sons, Ltd.*, 601 F. Supp. 1523, 1535 (S.D.N.Y. 1985)). Here, plaintiff bases both his conversion and § 17200 claim on rights granted by the Copyright Act – he seeks to recover for the misappropriation of "Long Live Music" and the musical tracks from his "Energy" work. Nevertheless, he contends that these claims are not preempted because the remedies for conversion and § 17200 violations differ from those provided by the Copyright Act. The remedy for violation of the state claim does not inform the court's decision, only whether the state law right includes an extra element. Plaintiff does not dispute that the state law claims in question are based entirely upon the alleged misappropriation of his copyrighted works, accordingly, no qualifying "extra element" is present.[5]

Under the second prong of the analysis, the court must determine whether plaintiff's works fall within the subject matter of copyright. Because plaintiff clearly alleges that the "Long Live

---

[5] Plaintiff's contention that conversion may (at least under Florida law) require scienter, raised for the first time at oral argument, is unavailing. As plaintiff acknowledges, copyright infringement is an intentional tort.

ORDER RE: DEFENDANTS' MOTIONS TO DISMISS—No. C-05-03534 RMW
MAG                                    15

1   Music" script was a registered copyrighted work and that the "Energy" soundtrack and the "Heavy
2   Light" individual track were copyrighted material (1st Am. Compl. ¶¶ 6-8, 10), this prong is easily
3   met. As both prongs are met with respect to both claims, the court finds that plaintiff's claims for
4   conversion and violation of § 17200 are preempted by the Copyright Act.

### 4. Laches

Finally, Hurd asks the court to dismiss all of plaintiff's claims against her on the basis of laches, "an equitable defense that bars the claims of a plaintiff 'who with full knowledge of the facts, acquiesces in a transaction and sleeps upon his rights.'" *Kourtis*, 419 F.3d at 1000 (citing *Danjaq*, 263 F.3d at 950-51). "A defendant asserting laches must establish both unreasonable delay by the plaintiff and prejudice to himself." *Id.*

Although defendants appear to have a strong laches defense on plaintiff's remaining copyright claims, "a claim of laches depends on a close evaluation of all the particular facts in a case," and it therefore "is seldom susceptible of resolution by summary judgment." *Kling v. Hallmark Cards, Inc.*, 225 F.3d 1030, 1041 (9th Cir. 2000) (internal quotation marks omitted). The same rationale would certainly apply to resolution of the applicability of laches on a motion to dismiss. Additionally, plaintiff alleges willful copyright infringement. The defense of laches is unavailable to a willful infringer. *See Danjaq*, 263 F.3d at 957. The court cannot resolve on the face of the pleadings whether plaintiff's allegations are true, or whether defendants created, produced and distributed the *Terminator* films "with knowledge that their . . . conduct constituted copyright infringement." *See id.* Thus, the motion to dismiss plaintiff's claims on the basis of laches is premature.

### III. ORDER

For the foregoing reasons, the court denies defendants' motions to dismiss for improper venue or transfer is denied. Defendants' motions to dismiss pursuant to Fed. R. Civ. Proc. 12(b)(6) are granted in part as follows:

1.  Plaintiff's copyright infringement claims prior to August 31, 2002 are dismissed as time-barred. Plaintiff's copyright claims after August 31, 2002 survive defendants' motion to dismiss.

2. Plaintiff's second claim for conversion and fourth claim for violation of California Business and Professions Code § 17200 are dismissed as preempted by the Copyright Act.

3. Plaintiff's third claim for breach of implied contract is dismissed with leave to amend to allow him to attempt to plead an implied contract as to *Terminator 3* only. Plaintiff's claims for breach of implied contract as to the prior movies are dismissed as time-barred without leave to amend

4. Defendant Hurd's motion to dismiss all claims on the basis of laches is denied.

DATED: 2/27/07

*Ronald M Whyte*
RONALD M. WHYTE
United States District Judge

**Notice of this document has been electronically sent to:**

**Counsel for Plaintiff:**

Donald Charles Schwartz    triallaw@cruzio.com

**Counsel for Defendants:**

Charles Nathan Shephard    cshephard@ggfirm.com
Bruce Alan Isaacs    bisaacs@wymanisaacs.com
David Boren    dboren@wymanisaacs.com

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:** _____2/27/07_____               _/s/ MAG_
                                                              **Chambers of Judge Whyte**