E-FILED on   07/10/09

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| NEIL B. GOLDBERG,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>JAMES CAMERON, GALE ANN HURD, et al.<br><br>　　　　Defendants. | No. C-05-03534 RMW<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT AND GRANTING PLAINTIFF'S MOTION FOR LEAVE TO AMEND<br><br>**[Re Docket Nos. 65, 69, 98]** |

　　Defendants Gale Ann Hurd ("Hurd") and James Cameron ("Cameron") move for summary judgment with respect to plaintiff Neil B. Goldberg's ("Goldberg") claims for relief in his second amended complaint. Plaintiff opposes the motions for summary judgment and also moves to amend his complaint to include a claim for contributory infringement. For the reasons stated below, the court grants defendants' motions for summary judgment only as to plaintiff's direct infringement claims and grants plaintiff's motion to amend.

## I. BACKGROUND

　　Goldberg contends that a script and soundtrack he sent to New World Pictures in or around 1979 were misappropriated by Cameron and Hurd and incorporated into the popular action films

**United States District Court**
**For the Northern District of California**

1  "The Terminator" ("T-1") and "Terminator 2: Judgment Day" ("T-2"). Since then, two more

2  additions to the franchise have been released: "Terminator 3: Rise of the Machines" ("T-3") and

3  "Terminator 4: Salvation" ("T-4"). There has also been a spin-off television program entitled "The

4  Sarah Connor Chronicles." The court refers collectively to these works as the "Terminator

5  Franchise." Broadly speaking, the Terminator films track the lives of Sarah and John Connor in

6  their (so far unsuccessful) efforts to avert a robot-controlled totalitarian future. Those efforts

7  include fending off increasingly sophisticated robot assassins sent back in time to stop the Connors

8  from thwarting the robots' eventual rise to self-awareness and world domination.

9         In the mid-1970s, Goldberg began composing songs for an album he called "Energy."

10  Declaration of Neil Goldberg ISO Opp. to Summ. J. ¶ 3 (hereinafter "Goldberg Decl."). The album

11  included tracks containing "futuristic, mechanized and brooding instrumentals" and a track called

12  "Gonna be a New World" characterized, according to Goldberg, by the "Cosmic Sound of

13  Ghandharva." *Id.* Thinking that the music could be a movie soundtrack, Goldberg began drafting a

14  movie script to serve as "a platform for the music." *Id.* at ¶ 4. The script, entitled "Long Live

15  Music," describes an epic battle in the future between humans and computers, and directs that

16  particular tracks from *Energy* accompany certain scenes. *Id.* at ¶ 5.

17         Goldberg contends that the films of the Terminator Franchise infringe on his copyright in

18  *Energy* and *Long Live Music*. He registered the script with the United States Copyright Office and

19  was issued a certificate of registration, No. Pau 175-490, on November 4, 1979. Defendants

20  Cameron and Hurd are the writer/director and writer/producer of T-1 and T-2. Decl. of Gale Anne

21  Hurd ¶ 3; Decl. of James Cameron ¶ 2. Goldberg alleges that he sent a promotional package

22  including the script and music to, among others, New World Pictures, where Cameron and Hurd

23  allegedly worked, around 1979. Goldberg Decl. ¶ 6 (hereinafter ""). According to Goldberg, the

24  Terminator films include plot elements and a soundtrack that are similar to his script and his

25  soundtrack.

26         Goldberg filed the instant lawsuit on August 31, 2005. On January 19, 2007, defendants

27  moved to dismiss, arguing that the three-year statute of limitations had run. The court granted the

28  motion to dismiss on that basis as to all copyright claims accruing before August 31, 2002. For

1  infringement after that date, the court denied the motion to dismiss. Defendants then moved on
2  November 4, 2008 for summary judgment on all claims in the second amended complaint, arguing
3  that: (1) Goldberg has no claim for copyright infringement that accrued after August 31, 2002; (2)
4  all of Goldberg's claims are barred by the doctrine of laches; and (3) all of Goldberg's non-copyright
5  claims depend on the copyright claims and therefore should be dismissed as well.

6  Up until two days before the date noticed for the hearing on Cameron and Hurd's motions for
7  summary judgment, Goldberg was proceeding *pro se*, and filed papers in opposition to the motions
8  for summary judgment. *See* Docket Nos. 72, 76, 77, 78, 79, 80, 81 and 82. The day before the
9  summary judgment hearing, Goldberg retained counsel and moved to continue the hearing. The
10 court granted Goldberg's motion to continue, and the hearing date was eventually set for March 20,
11 2009. In that continuance order, the court asked that the parties agree on discovery necessary to
12 respond to defendants' motions for summary judgment.

13 In the interim, Goldberg developed a new theory of his case. On January 5, 2009, he moved
14 for discovery of pre-2002 events in support of a claim for contributory infringement against
15 defendants. *See* Docket No. 89. Finding that the pending motions for summary judgment were
16 based exclusively on the claims against Cameron and Hurd for their acts of direct infringement after
17 August 31, 2002, the court denied the discovery motion on January 26, 2009. Docket No. 96. In
18 that order, the court stated that "[p]laintiff may move to amend his complaint to include a claim for
19 contributory infringement if he wishes to assert that theory." *Id.* Goldberg filed a motion for leave
20 to file a third amended complaint on February 11, 2009.

## II. ANALYSIS

22 Defendants' motions for summary judgment and the motion for leave to amend have some
23 issues in common. Defendants' motions, as filed, sought summary judgment on all remaining claims
24 arising out of the second amended complaint. *See* Hurd Mot. for Summary Judgment (hereinafter
25 "Hurd MSJ"); James Cameron's Mot. for Summ. J. (hereinafter "Cameron MSJ"). But the motions
26 understandably did not address plaintiff's previously unasserted contributory infringement theory.
27 Plaintiff now argues that the complaint adequately pleads facts sufficient to state a claim for
28 contributory copyright infringement. Pl.'s Reply ISO Mot. to Amend 3. In the analysis that follows,

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT AND
GRANTING PLAINTIFF'S MOTION FOR LEAVE TO AMEND—No. C-05-03534 RMW
JAS                                                         3

1 the court will treat defendants' motions for summary judgment as extending only to claims for direct, 2 as distinct from contributory infringement. The merits of plaintiff's contributory infringement theory 3 will be considered in the discussion of whether allowing Goldberg to file a third amended complaint 4 would be futile.

### A. Summary Judgment

Summary judgment is proper when there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006)(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Id.* If the moving party meets its initial burden of identifying for the court those portions of the material on file that it believes demonstrates the absence of any genuine issues of material fact, the burden of production shifts and the nonmoving party must set forth "specific facts showing that there is a genuine issue for trial." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

#### 1. Direct Infringement

In a previous order, this court dismissed all of plaintiffs claims for copyright infringement that accrued prior to August 31, 2002 as barred the Copyright Act's three-year statute of limitations. Docket No. 39. The supplemental state claims were also dismissed. Hurd and Cameron now move for summary judgment, arguing that because they have committed no infringing acts since August 31, 2002, all of Goldberg's claims are time-barred. In *Roley v. New World Pictures, Ltd.*, the Ninth Circuit stated that "[i]n a case of continuing copyright infringements, an action may be brought for all acts that accrued within the three years preceding the filing of the suit." 19 F.3d 479, 481 (9th Cir. 1994). Thus, in order to justify the denial of summary judgment in this case, Goldberg must show a triable issue of fact as to whether Hurd and Cameron committed any infringing acts within the three years preceding his filing of the suit, i.e acts occurring after August 31, 2002.

In support of their motions for summary judgment, Hurd and Cameron state that, since August 31, 2002, they have had no involvement whatsoever in the Terminator Franchise. Decl. of

Gale Anne Hurd ¶ 4 (hereinafter "Hurd Decl."); Decl. of James Cameron ¶ 5-6 (hereinafter "Cameron Decl."). Hurd describes her involvement with the Franchise as starting in 1982 when Cameron contacted Hurd regarding a story idea he had regarding a movie. Hurd Decl. at ¶ 6. As Cameron explained it at the time, the film would involve a cyborg assassin sent back from a totalitarian future to kill a woman who would soon give birth to the future leader of the revolution. *Id.* Hurd liked the idea, and told Cameron she would be willing to produce the film. *Id.* at ¶ 7-8. In 1984 Hurd produced, and Cameron directed, T-1. *Id.* at ¶ 11-17. Hurd and Cameron shared writing credit on T-1. *Id.* T-2 was released in 1991, and Hurd served as an executive producer on the film. *Id.* at ¶ 18-19. In 1998, Hurd sold her remaining sequel and remake rights to T-1 to AGV Productions. *Id.* at ¶ 22. That deal provided that Hurd would be given an executive producer credit "on a one time basis, and only for the first Additional Picture produced." Hurd Decl. Ex. A., 9. Other than that contractually-required executive producer credit, Hurd "had no involvement whatsoever in any activities related to T-1, T-2, T-3, [T-4], or the Terminator Franchise." *Id.* at ¶ 4.

Cameron, for his part, states that he directed and co-wrote T-1 and T-2. But he states that he was not in any way involved with T-3, T-4, or any other Terminator motion picture besides T-1 and T-2. Cameron Decl. ¶ 4. And, Cameron states, "at no time on or subsequent to August 31, 2002, have I been involved in any way whatsoever with the exploitation of [T-1] or [T-2]." *Id.* at ¶ 6.

Goldberg, however, does not now appear to contend that Hurd and Cameron themselves committed any acts of direct infringement after August 31, 2002. Therefore, Goldberg has failed to raise a genuine issue of material fact as to the claims in the second amended complaint for direct infringement. Cameron and Hurd's motions for summary judgment as to the direct infringement claims are therefore granted.

**2.    Laches**

Hurd also argues that defendants should be granted summary judgment because Goldberg's claims are barred by the doctrine of laches. This contention is moot in light of the granting of the motions for summary judgment on the direct infringement allegations. However, if plaintiff amends and successfully pleads a claim for contributory infringement, he may be able to allege willful

infringement to which the defense of laches is not available. *See Danjaq LLC v. Sony Corp.*, 263 F.3d 941, 957 (9th Cir. 2001).

### B. Motion For Leave to File a Third Amended Complaint

If a responsive pleading has already been filed, the party seeking to amend a complaint amendment may do so "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Generally, leave shall be freely given "when justice so requires." *Id.*; *Eminence Capital, LLC v. Aspeon, Inc.,* 316 F.3d 1048, 1051 (9th Cir. 2003). This rule reflects a strong underlying policy that favors determination of cases on their merits, and not on the technicalities of pleading rules. *See Foman v. Davis,* 371 U.S. 178, 181-82 (1962). Accordingly, the court must be very liberal in granting leave to amend a complaint. *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001) (quoting *Morongo Band of Mission Indians v. Rose,* 893 F.2d 1074, 1079 (9th Cir. 1990) (leave to amend granted with "extreme liberality"). Nevertheless, leave is not granted automatically. *Zivkovic v. S. Cal. Edison Co.,* 302 F.3d 1080, 1087 (9th Cir. 2002). Whether to allow leave to amend is within the discretion of the district court. *Id.* A district court may deny a party's request to amend a pleading where the amendment: (1) produces an undue delay in litigation; (2) is sought in bad faith or with dilatory motive; (3) unduly prejudices the adverse party; or (4) is futile. *AmerisourceBergen Corp. v. Dialysist West, Inc.,* 465 F.3d 946, 951 (9th Cir. 2006). An amendment is futile when an amended complaint could not withstand a motion to dismiss. *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir. 1998).

This case, filed in 2005, has been subject to some delay. In its order continuing the hearing on the present motions for summary judgment the court ordered Goldberg, as a condition of the continuance, to pay compensation to the defendants to partially reimburse them for expenses that were incurred as a result of plaintiff's unnecessary delay. Docket No. 86. Nonetheless, the case now appears to be proceeding toward conclusion, and there is no suggestion that the present motion to amend is brought in bad faith. The strong policy of resolving cases on their merits rather than on technicalities justifies permitting plaintiff to amend, so long as amending would not be futile.

#### 1. Futility

Goldberg seeks to amend his complaint to expressly allege claims for contributory infringement. Proposed Third Amended Complaint ¶¶ 65-77. Cameron and Hurd claim that any action for contributory infringement is barred by the statute of limitations.

### a.     The Statute of Limitations for Contributory Infringement

The parties dispute how the three-year statute of limitations in the Copyright Act applies to contributory infringement actions. The court notes that there is no clear binding authority on the subject. Therefore, the statute and related case law must be analyzed.

Goldberg contends that the direct infringement to which Cameron and Hurd contributed occurred after August 31, 2002, and, therefore, the statute of limitations has not run on his contributory infringement claims. Goldberg primarily relies on *Cain v. Universal Pictures Co., Inc.*, 47 F. Supp. 1013, 1017-18 (C.D.Cal. 1942), where the court stated, in dicta, that an action against a screenwriter was not barred by the statute of limitations despite the fact that the screenwriter's own conduct occurred outside of the statute of limitations period. *Id.* at 1018. The court stated:

> Therefore, conceding that the actual distribution of the picture, following its original release, was done by others than Taylor, the action is not barred, as to him, by the expiration of two years from the date of release. For the continuous exhibition of the picture is one of the aims of the composition of the script by him. He is, therefore, chargeable not only with the act of composing the screen play, but is also a participant in its incorporation into the motion picture and its subsequent exhibition. For those were the contemplated purposes inherent in his contribution. Hence the conclusion that the action as to Taylor is not barred by the statute of limitations.

*Id.* Goldberg further argues that this court should follow *Cain*, since it has been quoted and cited by the Ninth Circuit. Most recently, the court in *Roley v. New World Pictures, Ltd.* cited *Cain* in a string cite for the proposition that "[i]n a case of continuing copyright infringements, an action may be brought for all acts that accrued within the three years preceding the filing of the suit." 19 F.3d 479, 481 (9th Cir. 1994). *Roley*, however, neither endorses nor contradicts the statute of limitations discussion in *Cain*. It merely establishes that claims for direct infringement that accrue outside of the statutory period are barred; that is, a "continuing wrong" cannot extend the scope of actionable infringements backward in time. *Id.* Furthermore, in *Roley*, the plaintiff's claim was dismissed because he failed to produce evidence that the defendants had engaged in actionable conduct within the statutory period. *Id.* In this case, however, the question is whether a cause of action for

contributory infringement is available when *there are* allegations of direct infringement within the three years preceding suit.

Copyright actions are subject to a three-year statute of limitations under 17 U.S.C. § 507(b), which states: "No civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued."  Under this provision, a claim is barred by the statute of limitations if it is not filed within three years of the date the claim "accrued." This raises the issue of when a claim for contributory infringement accrues and whether a separate contributory infringement claim accrues with each consequent act of direct infringement.

### i. When Does a Contributory Infringement Claim Accrue?

As a general rule, a claim "accrues" when the plaintiff has "a complete and present cause of action."  *Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corporation of California*, 522 U.S. 192 (1997) (quoting *Rawlings v. Ray*, 312 U.S. 96, 98 (1941)).  That is, "[u]nless Congress has told us otherwise in the legislation at issue, a cause of action does not become 'complete and present' for limitations purposes until the plaintiff can file suit and obtain relief."  *Id.*  The Copyright Act uses "accrue" in this standard sense.  *See Auscape Intern. v. National Geographic Soc.*, 409 F. Supp. 2d 235, 237 (S.D.N.Y. 2004).

Accrual of a claim for contributory infringement, then, requires the existence of each element of the claim.  In the Ninth Circuit, "one contributorily infringes when he (1) has knowledge of another's infringement and (2) either (a) materially contributes to or (b) induces that infringement." *Perfect 10, Inc. v. Visa Intern. Service Ass'n*, 494 F.3d 788, 795 (9th Cir. 2007) (summarizing other Ninth Circuit and Supreme Court formulations of the "same basic test" for contributory infringement liability).  The existence of direct infringement is therefore a necessary element of a claim for contributory infringement.  *Id.*; *Bridgeport Music, Inc. v. Diamond Time, Ltd.*, 371 F.3d 883 (6th Cir. 2004) ("Without proof of direct infringement there can be no liability for contributory infringement").  Because a plaintiff cannot "file suit and obtain relief" for contributory infringement before the resulting direct infringement takes place, a contributory infringement claim does not accrue under the statute until the direct infringement occurs.

Although some cases in other circuits do not directly so state, they appear to consider a contributory infringement claim as having accrued before any direct infringement. In *Bridgeport Music v. Diamond Time*, the Sixth Circuit wrote: "Just as claims against a direct infringer who commits no acts within the three-year limitations period are time barred, claims against a contributory infringer who commits no acts within the limitations period are also time barred." 371 F.3d at 890. And in *Makedwde Publishing Company v. Johnson*, 37 F.3d 180, 182 (5th Cir. 1994), the Fifth Circuit held that a defendant was only liable, directly or contributorily, "for *his* acts of infringement committed within three years prior to Plaintiffs' lawsuit." The holding of these cases, that all contributing acts must fall within the three-year period, appear to overlook the possibility of an act of contribution outside the statutory period first producing a direct infringement within it. In such a case, the claim for contributory infringement would have accrued within the statutory period, and thus should not be barred by the statute of limitations. As pointed out by the Supreme Court, "[w]hile it is theoretically possible for a statute to create a cause of action that accrues at one time for the purpose of calculating when the statute of limitations begins to run, but at another time for the purpose of bringing suit, we will not infer such an odd result in the absence of any such indication in the statute." *Reiter v. Cooper*, 507 U.S. 258, 267 (1993). There is no such indication in the Copyright Act.

### ii. Does Each Direct Infringement Arising From One Contributing Act Start a New Limitations Period?

Assuming that a claim for contributory infringement does not accrue from a contributing act until some consequent direct infringement occurs, does each direct infringement create a separate claim for contributory infringement and start the running of a new limitations period? Contributory infringement as a cause of action is not expressly provided for in the Copyright Act, but is well established in the law. *See Sony Corporation of America v. Universal City Studios*, 464 U.S. 417, 436 (1984). As stated above, a claim for contributory infringement includes knowledge of another's direct infringement and material aid or inducement of that infringement. *Perfect 10, Inc.*, 494 F.3d at 795. A contributory infringer is held liable for the harm caused by the direct

1 infringer. *See Sony*, 464 U.S. at 435.  The question is whether each additional act of direct
2 infringement constitutes a separate claim with its own three-year statute of limitations.

3    Reviewing how subsequent events effect the statute of limitations for other types of cases
4 sheds light on the answer. *Bay Area Laundry* dealt with a pension plan that required employers who
5 wished to withdraw from the plan to pay a "withdrawal liability" in the form of periodic payments to
6 the pension fund.  522 U.S. at 195.  The Court held that each failure to pay a periodic payment
7 constituted a "new cause of action carrying its own limitations period." *Id.* at 208.  As the Court
8 wrote, "[j]ust as a pension plan cannot sue to recover *any* withdrawal liability until the employer
9 misses a scheduled payment, so too must the plan generally wait until the employer misses a
10 particular payment before suing to collect *that payment*." *Id.* (emphasis in original).  On the other
11 hand, in an action on a fraud claim, the statute of limitations is not revived merely because plaintiff
12 claims that new or additional damages were incurred.  *See Nodine v. Shiley, Inc.*, 240 F.3d 1149,
13 1153-54 (9th Cir. 2001) (interpreting California law).

14    In *Aurora Enterprises, Inc. v. National Broadcasting Co., Inc.*, 688 F.2d 689, 694 (9th Cir.
15 1982) considered whether NBC's receipt of additional profits from a purportedly illegal contract
16 restarted the statute of limitations.  The court concluded that "the mere fact that defendants receive a
17 benefit today as a result of a contract executed in 1966 in which [plaintiff] was purportedly coerced
18 to part with syndication rights, is not enough to restart the statute of limitations. Any other holding
19 would destroy the function of the statute, since parties may continue indefinitely to receive some
20 benefit as a result of an illegal act performed in the distant past." *Id.*

21    These cases reflect a general rule that if the later event would alone provide plaintiff with a
22 new claim, then that claim has its own new limitations period.  In the contributory infringement
23 context, the inquiry is thus whether each additional act of direct infringement constitutes an
24 additional, separate breach of a legal duty by the defendant.  The Seventh Circuit, in *Taylor v.*
25 *Meirick,* concluded that inaction in the face of infringements by others could constitute such a
26 breach applying the continuing-wrong doctrine to copyright. 712 F.2d 1112, 1117 (7th Cir. 1982). In
27 *Taylor*, the plaintiff sued defendant Meirick for copying and selling his topographic maps. *Id.*
28 Meirick stopped copying and selling the maps in 1977, but the suit was not filed until over three

1  years later, in 1980. *Id.* The court wrote: "[K]nowing that he had placed infringing copies in the
2  hands of his dealers Meirick could not sit on his hands while they sold them. A tortfeasor has a duty
3  to assist his victim. The initial injury creates a duty of aid and the breach of the duty is an
4  independent tort." *Id.* Although *Taylor* was concerned with whether damages incurred outside of
5  the three-year period were recoverable rather than whether direct infringements start the limitations
6  period anew, its reasoning, that inaction in the face of continuing infringement constitutes a breach
7  of a legal duty, is instructive. If *Taylor*'s reasoning applied here, then each direct infringement
8  arising out of the contributing act could represent an additional failure to cure the original
9  contributory infringement, and constitute an additional independent cause of action.

10  The Ninth Circuit in *Roley* rejected *Taylor*'s continuing-wrong theory, holding that the three-
11  year statute of limitations on direct infringement is a strict bar. 19 F.3d at 481. In *Roley*, the court
12  found that the plaintiff "fail[ed] to produce any evidence that appellees engaged in actionable
13  conduct" within the statutory period. *Id.* at 482. If *Taylor*'s reasoning had persuaded the court in
14  *Roley*, such a showing would have been unnecessary; the defendant's "sitting on his hands" would
15  have been enough. Therefore, additional direct infringements do not result in additional
16  contributory infringements arising from an earlier contributory act and the start of additional
17  limitations periods in which to file suit. The contributory infringement occurs, and the statute of
18  limitations period begins to run, when there has been: (1) an act inducing or materially contributing
19  to (2) an act of direct infringement. Later direct infringements do not restart the statute of
20  limitations for an action based upon contributory infringement.

21  The policy justifying statutes of limitations support the rule applied here. First, as Cameron
22  points out, if each new direct infringement resulted in the start of a new limitations period, such a
23  rule would eviscerate the statute of limitations for contributory infringement actions since creative
24  works are now commonly exploited long into the future. In amending the Copyright Act to include
25  an explicit statute of limitations, Congress meant to ameliorate the uncertainty of the previous
26  regime, which adopted state statutes of limitations. *See Auscape*, 409 F. Supp. 2d at 245. "An
27  infringer could face a statute of limitations of as long as eight years or as short as one year
28  depending on the state where the infringement occurred. Not only were users of intellectual

United States District Court
For the Northern District of California

property interested in a fixed statute of limitations to know when they would be liable, but lawyers for both sides supported a uniform period as clarifying a situation described to Congress as 'quite confusing.'" *Id.* An unlimited statute of limitations for contributory infringement would significantly undermine this congressional purpose. *See also Polar Bear Productions*, 384 F.3d at 706 ("Section 507(b), like all statutes of limitations, is primarily intended to promote the timely prosecution of grievances and discourage needless delay.").

Second, it makes sense to consider subsequent acts of direct infringement as more akin to the suffering of additional damages than to the creation of new contributory infringement claims arising out of the same act of contribution. The direct infringements are the consequences of the contribution, and thus bear a strong similarity to further consequential damages in a tort action. Finally, this holding treats contributory and direct infringement similarly for statute of limitations purposes: once a plaintiff has a live action for contributory infringement based on a particular act of contribution, the plaintiff has three years in which to file suit.

### iii.    Goldberg's Claim for Contributory Infringement

In the Ninth Circuit a direct infringement claim accrues when a plaintiff discovers, or reasonably could have discovered, the infringement. *Polar Bear Productions,* 384 F.3d at 706; *Roley*, 19 F.3d at 481 ("A cause of action accrues when a plaintiff knows of the infringement or is chargeable with such knowledge.")  This is called the "discovery rule."  Other courts have adopted what is known as the "injury rule," which holds that a claim accrues on the date of the act of infringement. *Auscape*, 409 F.Supp.2d at 247 (S.D.N.Y. 2004); s*ee generally* NIMMER ON COPYRIGHT § 12.05[B][2][a] (2008).

Based on the above analysis, the question here is whether any of Goldberg's claims for contributory infringement accrued within the three years prior to his filing suit. In order for a claim for contributory infringement to accrue within the statutory period, Ninth Circuit law requires that Goldberg must not have discovered, or reasonably could not have discovered, the first consequent direct infringement by August 31, 2002.

In the proposed Third Amended Complaint, Goldberg alleges that Cameron, as the writer and director of T-1 and T-2, intended the continuous exhibition of the films into the indefinite future. *Id.*

at ¶ 67. Hurd, as a producer and writer, intended the same. *Id.* at ¶ 68. The complaint also alleges that, in 1984 and 1991, Cameron entered into two personal service contracts with Orion Pictures and Carolco Pictures, respectively, to write and direct the first two Terminator films. *Id.* at ¶ 70. According to the complaint: "Mr. Cameron provided representations and warranties to the effect that he would be creating original material for the pictures as opposed to infringing materials. Plaintiff is informed and believes that Mr. Cameron provided these representations and warranties without disclosing the use of plaintiff's copyrighted materials in the Terminator pictures." *Id.* And in 1998, Hurd assigned her rights to make sequels or remakes in an agreement that transferred "the sole and exclusive rights" to the musical accompaniment in the original films. *Id.* at ¶ 72. Goldberg states that these warranties constitute acts of contributory infringement, and render Cameron and Hurd liable for direct infringements by others after August 31, 2002. *Id.* at ¶ 77. Finally, the proposed Third Amended Complaint alleges that Cameron and Hurd have knowingly encouraged and induced infringement of Goldberg's copyrights since August 31, 2002 by "providing false representations and warranties of ownership, non-infringement, exclusive rights, compliance with laws, and the like in various agreements relied upon by today's distributors and producers of *The Terminator* motion pictures." *Id.* at ¶ 69.

Goldberg may not have discovered or reasonably been able to discover Hurd's 1998 assignment of rights and the first consequent direct infringement resulting from that assignment until the release of T-3 in 2003. Therefore, his claim for contributory infringement arising out of the 1998 agreement may be viable.

The remaining allegations of contributory infringement appear, according to the facts as alleged in the complaint, barred by the statute of limitations. The original productions of T-1 and T-2, the subject of Cameron's agreements in 1984 and 1991, were widely released in theaters and enjoyed great commercial success. Goldberg's purported claim for contributory infringement arising out of those agreements accrued long before August 31, 2002, likely sometime soon after the release of the films when he would reasonably have discovered the alleged direct infringement.

Goldberg also alleges that the warranties in the various agreements warranties are relied upon today by producers and distributors of the Terminator Franchise films. There are, however, no

1  facts that suggest any contributing act by Cameron or Hurd after Hurd's alleged assignment in 1998.
2  Hurd Decl. ¶ 4; Cameron Decl ¶ 5-6. No evidence is offered to contradict those statements.

3      As pled, only the contributory infringement claim arising out of Hurd's 1998 agreement and
4  the direct infringement by the release of T-3 in 2003 appears not to be barred by the statute of
5  limitations. Therefore, it would appear that plaintiff can, at best, only pursue that one contributory
6  infringement claim. Nevertheless, the court will allow plaintiff to file one last amended complaint,
7  and he is free to file any claim that he in good faith believes is not barred by the court's conclusion
8  as to the application of the statute of limitations.

### III. ORDER

10      For the reasons stated above, defendants' motions for summary judgment are granted as to all
11  direct infringement claims and denied without prejudice as to claims of contributory infringement.
12  A claim for contributory infringement accrues upon the date the plaintiff discovered, or reasonably
13  should have discovered, the direct infringement induced or materially contributed to by a defendant's
14  contributing act. Although it appears that plaintiff at best only has a contributory infringement case
15  based upon Hurd's assignment in 1998, the court grants plaintiff's motion for leave to file a third
16  amended complaint which must be filed within 20 days of this order.

19  DATED:   07/10/09

*Ronald M. Whyte*
RONALD M. WHYTE
United States District Judge

**United States District Court**
**For the Northern District of California**

**Notice of this document has been sent to:**

**Plaintiff:**

Jefferson Thomas Stamp    jtstamp2002@yahoo.com

**Counsel for Defendants:**

Charles Nathan Shephard    cshephard@ggfirm.com
Bruce Alan Isaacs    bisaacs@wymanisaacs.com
David Boren    dboren@wymanisaacs.com

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:** 07/10/09                JAS
**Chambers of Judge Whyte**