Bruce Isaacs, Esq., SBN 100926
Robert A. Wyman, Esq., SBN 116975
WYMAN & ISAACS LLP
8840 Wilshire Blvd., Second Floor
Beverly Hills, CA 90211
E-mail address: bisaacs@wymanisaacs.com
Tele: (310) 358-3221
Fax: (310) 358-3224

Attorneys for Defendants
GALE ANN HURD and
PACIFIC WESTERN PRODUCTIONS, INC.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE BRANCH

| | |
|---|---|
| NEIL B. GOLDBERG,<br><br>        Plaintiff,<br><br>  vs.<br><br>JAMES CAMERON and GALE ANN HURD, PACIFIC WESTERN PRODUCTIONS, INC. and DOES 2 through 10,000, inclusive,<br><br>        Defendants.<br>_____ | ) Case No.: C05-03534 (RMW)<br>) (Assigned to the Hon. Ronald M. Whyte in Dept. "6")<br>)<br>) **DEFENDANT GALE ANNE HURD'S AND PACIFIC WESTERN PRODUCTIONS, INC.'S ANSWER TO PLAINTIFF NEIL B. GOLDBERG'S THIRD AMENDED COMPLAINT**<br>)<br>)<br>)<br>) |

Defendant Gale Anne Hurd "(Hurd") and Pacific Western Productions, Inc. ("Pacific Western") (collectively, "Hurd" or "her" or "she") hereby answer the Third Amended Complaint ("TAC") of Plaintiff Neil B. Goldberg ("Goldberg") by admitting, denying and alleging as follows:

## PRELIMINARY STATEMENT

In its February 27, 2007 Order, this Court ruled that Goldberg's copyright claims pertaining to "Terminator" movies which pre-date August 31, 2002 are untimely. As a result, this Court specifically ruled that Goldberg's copyright claims relating to "Terminator" ("T-1") and "Terminator 2: Judgment Day" ("T-2") are time barred. In particular, the Court ruled that "plaintiff's purported lack of knowledge was unreasonable, plaintiff is unable to assert his alleged copyright claims, continuing or otherwise, prior to August 31, 2002." February 27, 2007 Order, p. 13: 7 – 8. In addition, in its February 27, 2007 Order, the Court held that Goldberg's implied contract claims as to T-1 and T-2 are likewise untimely. February 27, 2007 Order, p. 14: 26 – 27.

In its July 10, 2009 Order, this Court granted Hurd's motion for summary judgment and ruled that Goldberg has no direct copyright infringement claim against Hurd (or Cameron).

However, as the Court also ruled on July 10, 2009, Goldberg was permitted to move forward with a contributory copyright infringement claim against Hurd, based solely on her 1998 Assignment Agreement, relating to Terminator movies or televisions shows which post-date August 31, 2002. In this respect, the Court permitted Goldberg to move forward with his contributory copyright infringement claim as to "Terminator 3: Rise of the Machines ("T-3"), released in 2003, the "Sarah Conner Chronicles" (the "Terminator Television Show"), which first aired in 2008 and "Terminator Salvation" ("T-4"), released in 2009.

Hurd contends that Goldberg's Third Amended Complaint is an attempt by Goldberg to circumvent the Court's prior orders. In particular, Goldberg seeks to "back-door" a direct copyright infringement claim by reviving claims pertaining to T-1 and T-2 under the guise that he was do so in order to prosecute claims pertain to T-3, the Terminator Television Series and T-4. Hurd contends that the Court should not condone this disingenuous tactic implemented by Goldberg by way of his Third Amended Complaint.

In addition, Goldberg's contributory copyright infringement claim is based on a flawed legal theory that defies common sense. It is undisputed that one of the requisite elements of a contributory copyright infringement claim is that a defendant, in this case Hurd, must have had actual knowledge of the direct infringement. Goldberg's entire claim focuses on various representations and warranties purported made by Hurd in 1998 as set forth in the Assignment Agreement by which she granted the sequel rights to the Terminator franchise. At the time of her representations and warranties in 1998, Hurd could not possibly have knowledge that a movie released five years in the future, T-3, a television show aired ten years in the future, the Terminator Television Show, or a movie released eleven years in the future, T-4, would purportedly contain infringing elements. It is simply not possible for Hurd to have knowledge in 1998 of purportedly infringing movies and television shows which had not yet been written, developed, produced, distributed or exploited.

In short, the premise of Goldberg's contributory copyright infringement claim defies logic and Goldberg should not be permitted to use this flawed contributory copyright infringement claim as a device to re-litigate claims relating to T-1 and T-2 in violation of this Court's prior orders.

### NATURE OF THE ACTION

1.  Hurd admits that this action is brought under the Copyright Act, denies that Goldberg's story or music is original or contains protectable expression and conveys the mood of a world controlled by machines heading toward destruction,

denies that Goldberg's literary and musical works are original or that either contains protectable expression and otherwise lacks sufficient information and belief to answer the other allegations of this paragraph and, basing her denial on that ground, denies the allegations of this paragraph.

2. Hurd admits that T-1 was released in 1984 and starred Arnold Schwarzenegger and that T-2 was released in 1991, but otherwise denies the allegations of this paragraph, as phrased.

3. Hurd denies the allegations of this paragraph and further denies that she needed Goldberg's authorization for any purpose.

4. Hurd admits that there were sequels and spin-offs of the Terminator films after August of 2002, but otherwise denies the allegations of this paragraph.

5. Hurd denies that Goldberg has, in actuality, limited his claims to comply with the Court's July 10, 2009 Order.  Rather, Hurd contends that Goldberg is attempting to re-litigate issues pertaining to T-1 and T-2 in violation of the Court's prior rulings.

## THE PARTIES

6. Hurd lacks sufficient information and belief to answer the allegations of this paragraph and, basing her denial on that ground, denies the allegations of this paragraph.

7. Hurd admits that, based on the court's prior rulings, Cameron is not a party to this action, nor should he be named.

8. Hurd admits the allegations of this paragraph.

9. Hurd denies that Pacific Western is the alter ego of Gale Anne Hurd.

10. Hurd lacks sufficient information and belief to answer the allegations of this paragraph and, basing her denial on that ground, denies the allegations of this paragraph.

## JURISDICTION AND VENUE

11. Hurd admits the allegations of this paragraph.

## PURPORTED FACTUAL BACKGROUND

12. Hurd lacks sufficient information and belief to answer the allegations of this paragraph and, basing her denial on that ground, denies the allegations of this paragraph.

13. Hurd lacks sufficient information and belief to answer the allegations of this paragraph and, basing her denial on that ground, denies the allegations of this paragraph.

14. Hurd lacks sufficient information and belief to answer the allegations of this paragraph and, basing her denial on that ground, denies the allegations of this paragraph

15. Hurd lacks sufficient information and belief to answer the allegations of this paragraph and, basing her denial on that ground, denies the allegations of this paragraph.

16. Hurd lacks sufficient information and belief to answer the allegations of this paragraph and, basing her denial on that ground, denies the allegations of this paragraph.

17. Hurd denies the allegations of this paragraph.

18. Hurd admits that Gale Anne Hurd produced and received a co-writing credit on T-1 and produced T-2. Hurd admits that Cameron directed T-1 and T-2.

19. Hurd denies the allegations of this paragraph.

20. Hurd denies the allegations of this paragraph, and denies, given the Court's prior rulings, that the purported similarities relating to T-1 and T-2 are even at issue in this case.

21. Hurd denies the allegations of this paragraph, and denies, given the Court's prior rulings, that the purported similarities relating to T-1 and T-2 are even at issue in this case.

22. Hurd denies the allegations of this paragraph.

23. Hurd denies the allegations of this paragraph, as phrased, but denies that that these allegations have any relevance to this action.

24. Hurd admits the allegations of this paragraph, and denies that these allegations have any relevance to this action.

25. Hurd admits the allegations of this paragraph, but denies that these allegations have any relevance to this action.

26. Hurd admits the allegations of this paragraph (but lacks information and belief as to the date), but denies that these allegations have any relevance to this action.

27. Hurd admits the allegations of this paragraph, but denies that these allegations have any relevance to this action.

28. Hurd denies the allegations of this paragraph.

29. Hurd denies the allegations of this paragraph.

30. Hurd admits the allegations of this paragraph, but denies that these allegations have any relevance to this action.

31. Hurd admits the allegations of this paragraph, but denies that these allegations have any relevance to this action.

32. Hurd admits the allegations of this paragraph, but denies that these allegations have any relevance to this action.

33. Hurd lacks sufficient information and belief to answer the allegations of this paragraph and, basing her denial on that ground, denies the allegations of this paragraph.

34. Hurd admits that she was the executive producer of T-2, that it was released in 1991 and that it was a commercial success, but Hurd lacks sufficient information and belief to answer the remaining allegations of this paragraph and, basing her denial on that ground, denies the remaining allegations of this paragraph.

35. Hurd admits that she entered into the 1998 Assignment Agreement in exchange for consideration, but otherwise denies the allegations of this paragraph.

36. Hurd denies and disputes Goldberg's characterizations of the 1998 Assignment Agreement.

37. Hurd denies and disputes Goldberg's characterizations of the 1998 Assignment Agreement.

## FIRST CAUSE OF ACTION

**(Contributory Infringement of Copyright – Against Defendants Hurd and Pacific Western)**

38. Hurd incorporates by this reference her responses to paragraphs 1 – 37 as set forth above.

39. Hurd denies the allegations of this paragraph.
40. Hurd denies the allegations of this paragraph.
41. Hurd denies the allegations of this paragraph.
42. Hurd denies the allegations of this paragraph.
43. Hurd denies the allegations of this paragraph.
44. Hurd denies the allegations of this paragraph.
45. Hurd denies the allegations of this paragraph.
46. Hurd denies the allegations of this paragraph.
47. Hurd denies the allegations of this paragraph.

## REQUEST FOR JURY TRIAL

48. Hurd hereby requests a trial by jury.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

As a separate and affirmative defense to each and every claim for relief, Hurd alleges that Goldberg has failed to set forth sufficient facts to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

As a separate and affirmative defense to each and every claim for relief, Hurd alleges that this Court does not have personal jurisdiction over her pursuant to Fed. R. Civ. P. 12(b)(2) and Ninth Circuit case law.

### THIRD AFFIRMATIVE DEFENSE

As a separate and affirmative defense to each and every claim for relief, Hurd alleges that this Court is an improper venue for this action pursuant to Fed. R. Civ. P. 12(b)(3) and Ninth Circuit case law.

### FOURTH AFFIRMATIVE DEFENSE

As a separate and affirmative defense to each and every claim for relief, Hurd alleges that the claims set forth in the TAC are barred by virtue of the doctrine of independent creation.

### FIFTH AFFIRMATIVE DEFENSE

As a separate and affirmative defense to each and every claim for relief, Hurd alleges that the claims set forth in the TAC are barred by the applicable statute of limitations, including 17 U.S.C. § 507(b).

### SIXTH AFFIRMATIVE DEFENSE

As a separate and affirmative defense to each and every claim for relief, Hurd alleges that the claims set forth in the TAC are barred by virtue of the fact that there is not sufficient or actionable similarity between Goldberg's movie treatment/script entitled "Long Live Music", alternatively called "Music Warrior" (the "Treatment" or "Goldberg Treatment"), on the one hand, and any of the "Terminator" films with which Hurd was involved, on the other, as well as no sufficient or actionable similarity between Goldberg's music ("Goldberg's Music"), on the one hand, and the soundtrack in any of the "Terminator" films with which Hurd was involved, on the other.

### SEVENTH AFFIRMATIVE DEFENSE

As a separate and affirmative defense to each and every claim for relief, Hurd alleges that the claims set forth in the TAC are barred by virtue of the fact that certain elements of Goldberg's Treatment that were allegedly infringed are mere ideas, are not original, are not protectable expression and/or worthy of copyright protection. It is Hurd's position that it is Goldberg's burden of proof to show that certain elements of the Treatment that were allegedly infringed are more than mere ideas, are original, are protectable expression and/or are worthy of copyright protection. To the extent the burden of proof shifts to Hurd, Hurd contends that certain elements of the Treatment that were allegedly infringed are mere ideas, are not original, are not protectable expression and are not worthy of copyright protection. In addition, Goldberg's claims are also barred by virtue of the fact that Goldberg's Music, or any portion thereof, that was allegedly infringed is not original, protectable expression or worthy of copyright protection. It is Hurd's position that it is Goldberg's burden of proof to show that Goldberg's Music that was allegedly infringed is original. To the extent the burden of proof shifts to Hurd, Hurd contends that neither Goldberg's Music, nor any portion thereof, that was allegedly infringed is original, protectable expression or worthy of copyright protection.

## EIGHTH AFFIRMATIVE DEFENSE

As a separate and affirmative defense to each and every claim for relief, Hurd alleges that the claims set forth in the TAC are barred by virtue of the fact that the purported similarities, if any, are non-protectable expression and are unprotectable scenes-a-faire.

## NINTH AFFIRMATIVE DEFENSE

As a separate and affirmative defense to each and every claim for relief, Hurd alleges that the claims set forth in the TAC are barred by virtue of the fact that certain elements of the Goldberg Treatment and Goldberg's Music are based upon prior art.

## TENTH AFFIRMATIVE DEFENSE

As a separate and affirmative defense to each and every claim for relief, Hurd alleges that certain or all elements of the Goldberg Treatment and Goldberg's Music are in the public domain.

## ELEVENTH AFFIRMATIVE DEFENSE

As a separate and affirmative defense to each and every claim for relief, Hurd alleges that Goldberg's claims are barred, in whole or in part, by the doctrine of laches.

## TWELFTH AFFIRMATIVE DEFENSE

As a separate and affirmative defense to each and every claim for relief, Hurd alleges that to grant relief to Goldberg as he requests would unjustly enrich Goldberg.

### THIRTEENTH AFFIRMATIVE DEFENSE

As a separate and affirmative defense to each and every claim for relief, Hurd alleges that Goldberg's claims are barred, in whole or in part, by the doctrine of estoppel.

### FOURTEENTH AFFIRMATIVE DEFENSE

As a separate and affirmative defense to each and every claim for relief, Hurd alleges that Goldberg's claims are barred by virtue of the doctrine of waiver.

### FIFTEENTH AFFIRMATIVE DEFENSE

As a separate and affirmative defense to each and every claim for relief, Hurd alleges that Goldberg's claims are barred by virtue of his own improper or inequitable conduct.

### SIXTEENTH AFFIRMATIVE DEFENSE

As a separate and affirmative defense to each and every claim for relief, Hurd alleges that Goldberg's claims are barred by virtue of Goldberg's unclean hands.

### SEVENTEENTH AFFIRMATIVE DEFENSE

As a separate and affirmative defense to each and every claim for relief, Hurd alleges that the claims set forth in the TAC are barred by virtue of the fact that Goldberg suffered no damages caused by Hurd's conduct.

### EIGHTEENTH AFFIRMATIVE DEFENSE

As a separate and affirmative defense to each and every claim for relief, Hurd alleges that she had no involvement in the development or creation of T-3, the Terminator Television Show or T-4.

### NINETEENTH AFFIRMATIVE DEFENSE

As a separate and affirmative defense to each and every claim for relief, Hurd alleges that she has not been involved and is not a distributor, broadcaster, or exhibitor and thus any exploitation of T-1 or T-2 within three years of the filing of this action was conducted by third parties, not by her.

### TWENTIETH AFFIRMATIVE DEFENSE

As a separate and affirmative defense to each and every claim for relief, Hurd alleges that Goldberg's claims are barred by the doctrine of fair use.

### TWENTY-FIRST AFFIRMATIVE DEFENSE

As a separate and affirmative defense to each and every claim for relief, Hurd alleges that Goldberg's claims are barred because her actions were legally justified.

### TWENTY-SECOND AFFIRMATIVE DEFENSE

As a separate and affirmative defense to each and every claim for relief, Hurd alleges that Goldberg's claims are barred because her actions were privileged, justified and Goldberg had no right to rely on any representations or warranties set forth in the 1998 Assignment Agreement and no standing to complain about any of the terms and conditions set forth in that agreement.

### TWENTY-THIRD AFFIRMATIVE DEFENSE

As a separate and affirmative defense to each and every claim for relief, Hurd alleges that the purported property rights in and to certain elements of the Goldberg's Treatment or Goldberg's Music, which Goldberg alleges were infringed, are owned and controlled by parties other than Goldberg and, as such, Goldberg has no standing to sue.

**TWENTY-FOURTH AFFIRMATIVE DEFENSE**

As a separate and affirmative defense to each and every claim for relief, Hurd alleges that the claims set forth in the TAC are barred by virtue of the fact that Goldberg does not own or control the exclusive copyright in and to certain elements of the Goldberg Treatment or Goldberg's Music.

**TWENTY-FIFTH AFFIRMATIVE DEFENSE**

As a separate and affirmative defense to each and every claim for relief, Hurd alleges that to the extent she has any liability for contributory copyright infringement, which Hurd denies, but assumes solely for the sake of asserting this defense, any contributory infringement or violation occurred without knowledge and with innocent intent.

**TWENTY-SIXTH AFFIRMATIVE DEFENSE**

As a separate and affirmative defense to each and every claim for relief, Hurd alleges that Goldberg is precluded from recovering statutory damages and/or attorney's fees for copyright infringement by virtue of 17 U.S.C. § 412.

**TWENTY-SEVENTH AFFIRMATIVE DEFENSE**

As a separate and affirmative defense to each and every claim for relief, Hurd alleges that Goldberg is precluded from any relief whatsoever because he has failed to join necessary and indispensable parties, the alleged infringers themselves.

**TWENTY-EIGHTH AFFIRMATIVE DEFENSE**

As a separate and affirmative defense to each and every claim for relief, and without shifting the burden of proof, Hurd alleges that Goldberg is precluded from any relief whatsoever because it is impossible to show that Hurd had knowledge in 1998 that future sequels and televisions shows, which had not yet been written, developed, produced, distributed or exploited, and which were not released or aired

until 2003, 2008 and 2009, would be infringing even assuming arguendo that Goldberg's allegations have any merit (which Hurd denies).

### TWENTY-EIGHTH AFFIRMATIVE DEFENSE

As a separate and affirmative defense to each and every claim for relief, and without shifting the burden of proof, Hurd alleges that Goldberg is precluded from any relief whatsoever because Hurd did nothing in connection with the 1998 Assignment Agreement, and engaged in no other conduct, which materially contributed to or induced infringement as to any other party in connection with T-3, the Terminator Television Show or T-4 or any other copyrighted work.

Hurd hereby reserves the right to assert additional affirmative defenses that become available or apparent during the pendency of this action.

WHEREFORE, Hurd prays for judgment as follows:
1. that Goldberg take nothing by virtue of his TAC;
2. for costs of suit incurred herein;
3. for her attorney's fees according to proof; and
4. for such other and further relief as the Court deems just and proper.

Date:  December 18, 2009        WYMAN & ISAACS LLP


By:   s/Bruce Isaacs
        Bruce Isaacs, Esq.
        Attorneys for Defendant
        GALE ANN HURD and
        PACIFIC WESTERN PRODUCTIONS, INC.

CERTIFICATE OF SERVICE

Pursuant to FRCP 5, I certify that I am an employee of the law firm of WYMAN & ISAACS LLP, and that on the date shown below, I caused service of a true and correct copy of the attached:

**DEFENDANT GALE ANNE HURD'S AND PACIFIC WESTERN PRODUCTIONS, INC.'S ANSWER TO PLAINTIFF NEIL B. GOLDBERG'S THIRD AMENDED COMPLAINT**

to be completed by:

   _____    personally delivering

   _____    delivery via Reno-Carson Messenger Service

   _____    sending via Federal Express or other overnight delivery service

   __X__    depositing for mailing in the U.S. mail with sufficient postage affixed thereto

   _____    delivery via facsimile machine to fax no. _____

   __X__    electronic filing, and thereby delivery via e-mail to:

| | |
|---|---|
| Jefferson T. Stamp, Esq.<br>15650-A Vineyard Blvd., #146<br>Morgan Hill, CA 95037<br>Jtstamp2002@yahoo.com<br>(Attorney for Plaintiff NEIL GOLDBERG)<br>**VIA U.S. MAIL** | Charles N. Shephard, Esq.<br>Greenberg Glusker Fields Claman<br>Machtinger & Kinsella LLP<br>1900 Avenue of the Stars<br>Suite 2100<br>Los Angeles, CA 90067-4590<br>cshephard@ggfirm.com<br>Facsimile: (310) 553-0687<br>**VIA U.S. MAIL** |

Dated this 18th day of December, 2009

                                                 /s/Lina Pearmain
                                                    Lina Pearmain