Jefferson T. Stamp (SBN 187975)
Attorney at Law
15650-A Vineyard Blvd., #146
Morgan Hill, CA 95037
Telephone: (408) 607-7263
E-mail: jtstamp2002@yahoo.com

Attorney for Plaintiff
NEIL B. GOLDBERG

Bruce Isaacs, Esq., SBN 100926
Robert A. Wyman, Esq., SBN 116975
WYMAN & ISAACS LLP
5757 Wilshire Blvd., Suite 475
Los Angeles, CA 90036
E-mail address: bisaacs@wymanisaacs.com
Tele: (323) 648-4144
Fax: (323) 648-4133

Attorneys for Defendants
GALE ANN HURD and
PACIFIC WESTERN PRODUCTIONS, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| NEIL B. GOLDBERG,<br><br>        Plaintiff,<br><br>    v.<br><br>JAMES CAMERON, GALE ANN HURD, PACIFIC WESTERN PRODUCTIONS, INC., and DOES 2 through 10,000,<br><br>        Defendants. | Case No.: C-05-03534 RMW<br><br>**JOINT CASE MANAGEMENT STATEMENT**<br><br><br>Date:   March 5, 2010<br>Time:  10:30 a.m.<br>Room:  6<br>Judge: Hon. Ronald M. Whyte |

The undersigned parties hereby submit their Joint Case Management Statement.

1. <u>Jurisdiction and Service</u>. This action is brought under the federal Copyright Act of 1976, as amended, 17 U.S.C. §§ 101 et seq. The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1338(a). The defendants have been served.

2. <u>Facts</u>. Plaintiff is the owner of a U.S. copyright in a compilation work comprised of a movie script and accompanying musical soundtrack. Plaintiff's script, entitled "Long Live Music," depicts the story of humanity's future war against renegade super-computers and their army of killer robots. Included with the script is a complete soundtrack containing futuristic, mechanized and brooding instrumentals. The music, originally published by plaintiff in an album called "Energy," conveys the mood of a world controlled by machines heading toward destruction. Plaintiff's script directs that particular tracks from *Energy* accompany certain scenes. In arranging the two elements of the story and the soundtrack, plaintiff created a unique, musically-enhanced dramatic work entitled to copyright protection as a combined whole.

Defendants wrote, directed and produced *The Terminator* motion picture first released in 1984. The filmed starred Arnold Schwarzenegger and was a great commercial success. The defendants developed the *Terminator* franchise by writing, directing and producing the sequel, *Terminator 2: Judgment Day*. The sequel was released in 1991 and was also widely successful.

Plaintiff alleges that defendants knowingly derived substantial parts of the *Terminator* films from plaintiff's copyrighted work. The compelling aspect of this case, as characterized by plaintiff, is that both the futuristic war story *and* the accompanying soundtrack were misappropriated for use in the *Terminator* motion pictures. According to plaintiff, the presence of *both* elements of plaintiff's copyrighted work renders the possibility of a coincidence extremely unlikely. The defendants never obtained plaintiff's authorization for the use of plaintiff's registered work.

Thereafter, plaintiff contends that Hurd and her "loan out company," Pacific Western Productions, assigned the *Terminator* rights to a third party and its successors for approximately $7.5 million (the "1998 Assignment Agreement"). These third parties, who

are not named as Defendants for direct copyright infringement in this action, subsequently produced and distributed additional *Terminator* sequels and spinoffs beginning in 2003. Plaintiff alleges that defendants induced the infringement of Plaintiff's copyright in these subsequent works.

3. <u>Legal Issues</u>. Defendants contend that in its February 27, 2007 Order, this Court ruled that Goldberg's copyright claims pertaining to "Terminator" movies which pre-date August 31, 2002 are untimely. As a result, this Court specifically ruled that Goldberg's copyright claims relating to "Terminator" ("T-1") and "Terminator 2: Judgment Day" ("T-2") are time barred. In particular, the Court ruled that "plaintiff's purported lack of knowledge was unreasonable, plaintiff is unable to assert his alleged copyright claims, continuing or otherwise, prior to August 31, 2002." February 27, 2007 Order, p. 13: 7 – 8. In addition, in its February 27, 2007 Order, the Court held that Goldberg's implied contract claims as to T-1 and T-2 are likewise untimely. February 27, 2007 Order, p. 14: 26 – 27.

In its July 10, 2009 Order, this Court granted Hurd's motion for summary judgment and ruled that Goldberg has no direct copyright infringement claim against Hurd (or Cameron).

However, as the Court also ruled on July 10, 2009, Goldberg was permitted to move forward with a contributory copyright infringement claim against Hurd, based solely on her 1998 Assignment Agreement, relating to Terminator movies or televisions shows which post-date August 31, 2002. In this respect, the Court permitted Goldberg to move forward with his contributory copyright infringement claim as to "Terminator 3: Rise of the Machines ("T-3"), released in 2003, the "Sarah Conner Chronicles" (the "Terminator Television Show"), which first aired in 2008 and "Terminator Salvation" ("T-4"), released in 2009.

Hurd contends that Goldberg's Third Amended Complaint is an attempt by Goldberg to circumvent the Court's prior orders. In particular, Goldberg seeks to "back-door" a direct copyright infringement claim by reviving claims pertaining to T-1 and T-2 under the guise that he has done so in order to prosecute claims pertain to T-3, the Terminator Television Series and T-4. Hurd contends that the Court should not

condone this disingenuous tactic implemented by Goldberg by way of his Third Amended Complaint.

In addition, Goldberg's contributory copyright infringement claim is based on a flawed legal theory that defies common sense. It is undisputed that one of the requisite elements of a contributory copyright infringement claim is that a defendant, in this case Hurd and her company Pacific Western, must have had actual knowledge of the direct infringement. Goldberg's entire claim focuses on various representations and warranties purportedly made by Hurd in 1998 as set forth in the 1998 Assignment Agreement by which she granted the sequel rights to the Terminator franchise. At the time of her representations and warranties in 1998, Hurd could not possibly have had the requisite knowledge that a movie released five years in the future, T-3, a television show aired ten years in the future, the Terminator Television Show, or a movie released eleven years in the future, T-4, would purportedly contain infringing elements. It is simply not possible for Hurd to have had the requisite knowledge in 1998 of purportedly infringing movies and television shows which had not yet been written, developed, produced, distributed or exploited.

In short, the premise of Goldberg's contributory copyright infringement claim defies logic and Goldberg should not be permitted to use this flawed contributory copyright infringement claim as a device to re-litigate claims relating to T-1 and T-2 in violation of this Court's prior orders.

In this respect, Hurd contends that the proper scope of this action is: (a) the facts and circumstances relating to the 1998 Assignment Agreement; (b) a comparison of Goldberg's literary works and Goldberg's musical works, on the one hand, and T-3, the Terminator Television Show and T-4, on the other (and not any type of comparison to T-1 or T-2); and (c) whether, in 1998, Hurd had the requisite knowledge that T-3, the Terminator Television Show and T-4 were infringing works (the "Scope of the Issues In Dispute").

In response to defendants' arguments, Plaintiff contends that he need only prove that defendants "expected" or "reasonably should have expected" infringement of his

original work as a result of the Assignment Agreement. See *Kalem v. Harper Bros.*, 222 U.S. 55, 62-63 (1911). Plaintiff has alleged that the 1998 Assignment Agreement specifically authorizes the production of sequels and other derivative works originating from Plaintiff's copyrighted materials. Plaintiff has also alleged that Defendants participated in and had specific knowledge of the original incorporation of his materials into the first two films. Defendants specifically deny that allegation. Plaintiff contends that, as a result of their actions in the first two films, it is inconceivable that Defendants did not expect future infringing works to be produced by virtue of the Assignment Agreement.

Finally, Plaintiff believes that the alleged infringement and incorporation of Plaintiff's work into the first two films forms is relevant to Plaintiff's claim for contributory infringement. Defendants specifically deny that allegation. Plaintiff maintains that the original incorporation of Plaintiff's materials into the first two films is relevant to show knowledge, intent, willfulness, access as well as the true derivation of the subsequent infringing *Terminator* sequels.

   4. <u>Previous Rulings on Motions</u>. On February 27, 2007, the Court granted the defendants motion to dismiss copyright infringement claims prior to August 31, 2002, as time-barred. Plaintiff's claims for conversion and violation of the Business and Professions Code § 17200 were dismissed as pre-empted by the Copyright Act. Plaintiff's claim for breach of implied contract was dismissed with leave to amend with respect to *Terminator 3* only. Defendant Hurd's motion to dismiss all claims based on laches was denied. Defendants' motion to transfer venue was denied.

   On July 27, 2007, the Court granted defendants' motion to dismiss plaintiff's claims based on breach of implied contract and negligence.

   On July 10, 2009, the Court granted defendants' motion for summary judgment on claims for direct copyright infringement. However, the Court granted plaintiff leave to amend to pursue a claim for contributory copyright infringement based on the 1998 Assignment Agreement.

   On December 1, 2009, the Court denied defendants' motion to dismiss the Third

Amended Complaint.

A motion to be relieved as counsel filed by Plaintiff's attorney, Jefferson T. Stamp, is pending and scheduled to be heard on March 19, 2010.

5. <u>Amendment of the Pleadings</u>.  Plaintiff may move to amend to add additional defendants such as the producers and distributors of *Terminator 3*, *Terminator 4* and the *Sarah Connor Chronicles*.

6. <u>Evidence Preservation</u>.  The parties have taken all required steps to preserve evidence, recognizing that the 1998 Assignment Agreement took place over 12 years ago and before the custom and practice, common today, of conducting business by e-mail.

7. <u>Initial Disclosures</u>.  On January 11, 2010, initial disclosures were completed by Plaintiff and Defendants Hurd and Pacific Western Productions, Inc.

8. <u>Discovery</u>.  Plaintiff has propounded Requests for Production to each of the defendants.  Defendant Cameron contends that he is not a "party" for purposes of discovery.  No depositions have been noticed yet.

9. <u>Class Action</u>.  This is not a class action.

10. <u>Related cases</u>.  There are no related cases pending.

11. <u>Relief</u>.  Plaintiff seeks to recover defendants' alleged unlawful profits for their contributory copyright infringement which amount is believed to be approximately $7.5 million.  Damages are sought based on 17 U.S.C. § 504(b).  Alternatively, plaintiff seeks statutory damages pursuant to 17 U.S.C. § 504(c).

12. <u>Settlement and ADR</u>.  The parties discussed the prospects for settlement at the 26(f) conference held on December 11, 2009.  There was no agreement on ADR at that time.  Defendants believe that no settlement is possible unless and until Plaintiff's case survives summary judgment.  The parties need to comply with ADR L.R. 3-5 and intend to do so.

13. <u>Consent to Magistrate Judge for all purposes</u>.  The parties will not consent to a magistrate judge for all purposes.

14. <u>Other references</u>.  The parties do not believe that the case is suitable for other references at this time.

15. <u>Narrowing of the Issues</u>.  The parties do not believe there can be a narrowing of the issues at this time.

16. <u>Expedited Schedule</u>.  The parties do not believe the case can be handled on an expedited basis.

17. <u>Scheduling</u>.  The parties proposed the following schedule:

| | |
|---|---|
| Designation of Experts: | September 24, 2010 |
| Discovery cutoff: | November 12, 2010 |
| Hearing of Dispositive Motions: | January 31, 2011 |
| Pre-trial Conference: | January 31, 2011 |
| Trial: | February 21, 2011 |

19. <u>Disclosure of Non-party interested entities or persons</u>.  Plaintiff has not filed the Certification of Interested Entities or Persons required by Local Rule 3-16.  Plaintiff's counsel has attempted but has not been able to confer with Plaintiff on this issue.

20. <u>Other matters that may facilitate just, speedy and inexpensive disposition of this matter</u>.  None at this time.

Respectfully submitted,

Jefferson T. Stamp, Attorney at Law

By:   /s/ Jefferson T. Stamp
    Jefferson T. Stamp
    Attorney for Plaintiff
    NEIL B. GOLDBERG

Dated:  February 26, 2010

Respectfully submitted,

WYMAN & ISAACS, LLP

By:   /s/ Bruce Isaacs
    Bruce Isaacs
    Attorney for Defendants
    GAIL ANN HURD &
PACIFIC WESTERN PROD'S., INC.

Dated:  February 26, 2010