**E-FILED on 8/11/2011**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| NEIL B. GOLDBERG,<br><br>    Plaintiff,<br><br>    v.<br><br>JAMES CAMERON, GALE ANN HURD, et al.<br><br>    Defendants. | No. C-05-03534 RMW<br><br>ORDER ON MOTIONS FOR ATTORNEYS' FEES UNDER 17 U.S.C. § 505<br><br>**[Re Docket Nos. 216, 218 ]** |

Defendants Gale Anne Hurd and Pacific Western Productions, Inc. (collectively "Hurd"), and defendant James Cameron ("Cameron") have both filed motions for attorneys' fees under 17 U.S.C. § 505 in this copyright infringement action brought by plaintiff Neil Goldberg ("Goldberg"). Defendant Cameron requests attorneys' fees in the amount of $100,677.50. Defendant Hurd requests $244,077.75 in attorneys' fees incurred through April 15, 2011, an additional $4,140 for estimated time spent for this motion, and $4,760.25 pursuant to the Bill of Costs filed with defendant Hurd's motion for attorneys' fees, for a total amount of $252,978. For the reasons stated below, the court grants defendants' motions.

## I. BACKGROUND

Goldberg filed this action on August 31, 2005. Goldberg filed a First Amended Complaint on December 19, 2006, alleging that he sent a script and soundtrack to New World Pictures in or around 1979, when defendants gained access to these materials, and that defendants incorporated these materials into the motion pictures "The Terminator" ("T-1") and "The Terminator 2: Judgment Day" ("T-2"). Goldberg further alleged that defendants engaged in infringing activity in connection with subsequent Terminator projects: "Terminator 3: Rise of the Machines" ("T-3"), "Terminator 4: Salvation" ("T-4"), and a spin-off television series entitled "The Sarah Connor Chronicles" ("Terminator television series") (collectively, with T-1, T-2, T-3, and T-4, "Terminator Franchise"). Cameron was the director and co-writer of T-1 and T-2, but had no involvement with any other Terminator projects. Shephard Decl. ¶ 3. Hurd co-wrote and produced T-1 and T-2, then assigned her rights to develop further projects in connection with the Terminator Franchise in 1998.

In February 2007, the court ruled that the statute of limitations had run and granted defendants' motions to dismiss all copyright claims accruing before August 31, 2002. The court denied defendants' motions to dismiss with respect to any copyright claims arising after August 31, 2002. In July 2007, after Goldberg filed a Second Amended Complaint, the court granted defendants' motions to dismiss all state law claims. On November 4, 2008, defendants moved separately for summary judgment. Goldberg appeared at the December 12, 2008 hearing with counsel he had retained the day before, and the court granted a continuance of the summary judgment motions to allow him time to file opposition. Shephard Decl. ¶ 9.

Following a hearing, the court granted defendants' motions for summary judgment with respect to all claims for direct copyright infringement, and gave Goldberg leave to amend his complaint in order to pursue a claim against Hurd for contributory copyright infringement in connection with Hurd's 1998 assignment of rights in the Terminator Franchise and the subsequent production of T-3, T-4, and the Terminator television series. Shephard Decl. ¶ 12. On April 4, 2011, the court granted Hurd's motion for summary judgment with respect to the claim for contributory copyright infringement.

On May 25, 2007, after the court granted defendants' motions to dismiss for claims barred by the statute of limitations, counsel for Cameron wrote to Goldberg's counsel, putting him on notice that prevailing parties in copyright infringement suits are eligible to recover attorneys' fees, and encouraging him to dismiss the case and pursue this matter against companies who had been "exploiting" the Terminator Franchise after August 31, 2002. Shephard Decl. ¶15.

## II. ANALYSIS

Defendants now seek attorneys' fees under 17 U.S.C. § 505. Defendants argue that they are entitled to attorneys' fees because Goldberg's action was frivolous, objectively unreasonable, and motivated by a desire to force well-known defendants with deep pockets to pay a settlement rather than litigate the case. Defendants also argue that attorneys' fees are appropriate in order to deter future plaintiffs from filing meritless claims, and to compensate defendants for successfully defending their copyright interests.

### A. Entitlement to Attorneys' Fees Under 17 U.S.C. §505

Section 505 of the Copyright Act provides that "the court may . . . award a reasonable attorney's fee to the prevailing party" in a copyright infringement action. 17 U.S.C. § 505. "Prevailing plaintiffs and prevailing defendants are to be treated alike," and "fees are to be awarded . . . only as a matter of the court's discretion." *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994). Indeed, "[t]here is no precise rule or formula for making these determinations, but instead equitable discretion should be exercised in light of the considerations . . . identified." *Id.* (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436-37 (1983)) (internal quotations omitted). In determining whether to award attorneys' fees to a prevailing party, courts may consider multiple nonexclusive factors, including (1) the degree of success obtained; (2) frivolousness; (3) motivation; (4) objective unreasonableness "both in the factual and legal arguments in the case"; and (5) the need "to advance considerations of compensation and deterrence." *Jackson v. Axton*, 25 F.3d 884, 890 (9th Cir. 1994). Blameworthiness, including a finding of bad faith or frivolousness, can be an influential consideration, but "is not a prerequisite to awarding fees to a prevailing defendant," and these nonexclusive factors "need not all be met." *Fantasy, Inc. v. Fogerty*, 94 F.3d 553, 558 (9th Cir.

1996). Ultimately, "[f]aithfulness to the purposes of the Copyright Act is . . .the pivotal criterion" in the decision to award attorneys' fees to a prevailing party. *Id.*

Weighing each of these factors and taking into account other relevant considerations as set forth below, the court grants defendants' motions for attorneys' fees.

### 1. Degree of Success Obtained

In *Fogerty*, the Supreme Court held that prevailing plaintiffs and defendants in copyright infringement actions are to be treated alike in determining whether to award attorneys' fees. 510 U.S. 517, 534 (1994). There, the Court expressly rejected the "British Rule for automatic recovery of attorney's fees by the prevailing party." *Id.* While success may be a prerequisite to obtaining fees, it does not automatically support awarding fees in the absence of other considerations. Nevertheless, here, defendants prevailed on summary judgment and have obtained a final judgment.

### 2. Frivolousness

Defendants argue that Goldberg's claims were frivolous due to Goldberg's delay in bringing this action, and because Goldberg continued litigation of the case as to T-1 and T-2 when the only potentially timely claims remaining were claims arising out of conduct related to T-3, T-4, and the Terminator television series, with which defendants were not involved. Goldberg's direct infringement claims were frivolous, and even his claim for contributory infringement, permitted by the court, approached frivolousness. *See Love v. Associated Newspapers, Ltd.*, 611 F.3d 601, 614-15 (9th Cir. 2010) (upholding an award of attorneys' fees where copyright claims "bordered on frivolous" and where the district court saw plaintiff's theory of the case as "fatally flawed from the outset.")

#### A. Cameron

Cameron argues that Goldberg's claims were frivolous because he pursued claims that were barred by the statute of limitations, and because he continued to litigate against Cameron after he was told repeatedly that Cameron did not commit any infringing acts within the three years before the case was filed.

The court agrees that Goldberg's direct infringement claims against Cameron were frivolous. Goldberg brought suit in August 2005, over twenty years after the release of T-1 and fourteen years

1  after the release of T-2, after which Cameron's involvement with the Terminator Franchise ceased.
2  Shephard Decl. ¶3. The three-year statute of limitations provided by the Copyright Act had clearly
3  run at the time Goldberg brought suit; all direct infringement claims against Cameron were time-
4  barred. Goldberg did not assert any copyright infringement claims against Cameron apart from the
5  direct infringement claims.

6      Goldberg submitted that he had embarked on a twenty-year spiritual journey in the 1980s
7  which prevented him from learning of defendants' allegedly infringing activities within three years
8  of the statute of limitations. Goldberg's asserted lack of knowledge of the alleged infringement was
9  not reasonable and was an insufficient excuse for bringing suit long after the statute of limitations
10  had run. Thus, Goldberg's claims against Cameron were frivolous.

11          **B.  Hurd**

12      Hurd argues that Goldberg's claims were frivolous because Goldberg waited over twenty
13  years to bring a lawsuit, sued the wrong parties, and continued to litigate claims relating to T-1 and
14  T-2 after the court ruled those claims were barred. Hurd further asserts that Goldberg did not prove
15  access to his works and did not demonstrate substantial similarity between protectable elements of
16  his work and the Terminator Franchise works.

17      As with respect to claims against Cameron, all direct infringement claims asserted against
18  Hurd were frivolous, as the statute of limitations barred any claims arising out of activity occurring
19  before August 31, 2002, which included all activity in connection with T-1 and T-2. As Hurd had
20  no further involvement with the Terminator Franchise aside from her 1998 assignment of rights, all
21  direct infringement claims against her were time-barred and frivolous.

22      Goldberg's contributory infringement claim against Hurd was potentially viable from a time
23  standpoint. Even after the court dismissed claims arising from conduct before August 31, 2002, and
24  granted summary judgment in part for defendants, the court itself believed Goldberg might have a
25  claim against Hurd based on her assignment of rights in future works in the Terminator Franchise.
26  Though the contributory infringement claim ultimately failed, it was not frivolous. *See Halicki*
27  *Films, LLC v. Sanderson Sales and Mktg.*, 547 F.3d 1213, 1230 (9th Cir. 2008) (denying attorneys
28

fees in case decided on the basis of standing in part because "the claims were not frivolous, fanciful, or clearly baseless.") (internal quotations omitted).

### 3. Objective Unreasonableness

In determining objective unreasonableness of a plaintiff's claims, one looks to both factual and legal reasonableness. *Jackson*, 25 F.3d at 890. Defendants argue that Goldberg's claims were factually and legally unreasonable because his direct infringement claims were time-barred, and because Goldberg did not demonstrate access or substantial similarity to support his claims substantively.

#### A. Cameron

Goldberg's claims against Cameron were objectively unreasonable, primarily due to the fact that Goldberg insisted on bringing his direct infringement claims against Cameron even after Cameron made it clear that he had no involvement with any Terminator projects after 1991. Indeed, Cameron eventually prevailed on summary judgment because it was evident that he had committed no infringing act within the statute of limitations. Goldberg's asserted lack of knowledge of the alleged infringement because he took a "spiritual journey" is, again, an insufficient excuse to establish that his claims against Cameron were reasonable. Further, counsel for Cameron put Goldberg on notice as early as May 2007 that his claims were entirely meritless and that Goldberg would likely have to pay Cameron's attorneys' fees in the event Cameron prevailed in the lawsuit.

Aside from the statute of limitations issue, Goldberg also failed to produce any evidence, apart from his own speculative oral testimony, that Cameron had any access to his script and soundtrack, and failed to demonstrate substantial similarity of protected elements of his works and any of the Terminator Franchise works. Nevertheless, Goldberg's pursuit of claims barred by the statute of limitations was sufficient in itself to render his claims against Cameron objectively unreasonable.

#### B. Hurd

Goldberg's direct infringement claims against Hurd likewise are objectively unreasonable based on the statute of limitations alone. In addition, Goldberg's contributory infringement against Hurd was also objectively unreasonable.

ORDER ON DEFENDANTS' MOTIONS FOR ATTORNEYS' FEES UNDER 17 U.S.C. §505
—No. C-05-03534 RMW
MEC            6

1        The court gave Goldberg leave to amend his complaint to include a contributory infringement claim for any infringing activity related to T-3, T-4 and the Terminator television series arising out of Hurd's 1998 assignment of rights in future Terminator Franchise works. Though it was conceivable that Goldberg could assert such a claim, he failed entirely to substantiate that claim.

       First, Goldberg failed to demonstrate that Hurd possessed the requisite knowledge to satisfy a contributory infringement claim. In granting summary judgment for Hurd, the court noted that Goldberg's argument regarding Hurd's knowledge of infringing activity after her 1998 assignment of rights "assume[d] that Hurd knew that she was assigning rights to material subject to Goldberg's copyright." Docket no. 214, 4-5. Yet, Goldberg did not provide any evidence whatsoever that Hurd had access to his copyrighted materials, apart from his own speculative oral testimony that he sent his materials to New World Pictures and they must have been seen by Hurd.

       Second, and even more problematic, Goldberg did not support his contributory infringement claim with a requisite underlying direct infringement claim against anyone associated with T-3, T-4, and the Terminator television series, nor did he offer any analytic dissection to show substantial similarity of protected elements of his works and those works. Though Goldberg pointed to similarities between his script and T-3, T-4, and the Terminator television series, the similarities involved unprotectable elements, namely, a common theme and elements that naturally follow from that theme. With respect to the music at issue, Goldberg did not proffer sufficient analytic dissection and comparison between his music and the music in T-3, T-4, and the Terminator television series. In fact, the specific music excerpts that were discussed and analyzed consisted of music from T-1. As the court concluded, "[a]t best, Goldberg . . . provided conclusions that compare T-1's music with Goldberg's music. They, however, [did] not provide an audio or visual comparison or analysis of the works at issue." Docket no. 214, 10. Because Goldberg failed to offer any evidence or analysis to substantiate his contributory infringement claim against Hurd, the claim as pursued was objectively unreasonable.

       **4.**     **Motivation**

Defendant Hurd asserts that Goldberg's motivation to bring this suit was nothing more than a "bad faith attempt to harass the Hurd defendants in this matter in an attempt to force them to pay him money to which he was not entitled." Def. Hurd's mot. 7: 6-7.  Hurd further argues that Goldberg's continued pursuit of defendants after they had explained their complete lack of involvement with the Terminator Franchise within the statutory period is evidence of his bad faith motivation in bringing and continuing the lawsuit.  Similarly, defendant Cameron argues that Goldberg was motivated purely by the desire to coerce a settlement out of celebrity defendants with deep pockets. Def. Cameron's mot. 8:21-22.  As evidence for these assertions, defendants rely primarily on Goldberg's waiting to bring suit until over twenty years from the time the first *Terminator* film was released.

There is no direct evidence that Goldberg brought his claims in bad faith.  To some degree, however, one could reasonably infer bad faith from the objective unreasonableness of his claims. Nonetheless, Goldberg appears to have subjectively believed he had been wronged and was merely blind to the weaknesses of his claims and the proof needed to support them. It is not clear that he had a bad faith motive nor is it readily apparent that he was attempting to harass defendants and coerce them into paying a settlement.  His "motivation in bringing the claims was to protect an interest that [he] believed was [his]," despite the lack of merit in his claims and no matter how misguided his belief.  *See Halicki*, 547 F.3d at 1230 (affirming a district court's denial of motion for attorneys' fees for prevailing defendant).  The fact that Goldberg's case was weak from the outset does not demonstrate that he litigated in bad faith.

**5.  Need to Advance Considerations of Compensation and Deterrence**

An award of attorneys' fees would advance considerations of compensation and deterrence because it would encourage defendants to defend themselves against meritless claims, instead of seeking settlement to avoid the cost and inconvenience of litigation.  An award of fees in this case would deter other plaintiffs from bringing meritless, objectively unreasonable claims.  Hurd and Cameron should be compensated for prevailing in this matter after defending themselves for six years against claims which were time-barred and meritless, especially where defendants and the court expended substantial resources due to Goldberg's continual failure to meet deadlines and do things on time.

### 6. Purpose of the Copyright Act

In *Fogerty*, the Court concluded that "copyright law ultimately serves the purpose of enriching the general public through access to creative works" and that, subsequently, "defendants who seek to advance a variety of meritorious copyright defenses should be encouraged to litigate them to the same extent that the plaintiffs are encouraged to litigate meritorious claims of infringement." 510 U.S. 517, 527 (1994). Here, an attorneys' fee award for both defendants furthers the purpose of the copyright act because it encourages defendants to litigate meritorious defenses. Additionally and central to the purpose of the Copyright Act, if defendants are compensated for defending their works, they will likely produce more creative works that will further enrich the general public.

### 7. Balancing the Factors

The court finds that a majority of the above considerations weigh heavily in favor of awarding defendants reasonable attorneys' fees.

### B. Reasonable Fees

"The benchmark for the award of attorney's fees is that the fee awarded must be reasonable." *Clark v. City of Los Angeles*, 803 F.2d 987, 990 (9th Cir. 1986). "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). This calculation, called the lodestar figure, is "presumptively a reasonable fee." *Clark*, 803 F.2d at 991. In determining a fee award, courts should also take into account what the "results obtained" (the degree of success of the prevailing party) and other important considerations.[1] Courts can adjust the lodestar figure up or down if appropriate.

---

[1] The court in *Jackson v. Georgia Highway Express*, articulated several factors to be considered in determining attorneys fees, including but not limited to time and labor required, novelty and difficulty of the questions, and experience, reputation, and ability of the attorneys. 488 F.2d 714, 717-719 (5th Cir.) However, many of these considerations are "subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate." *Hensley*, 461 U.S. at 434 n.9.

ORDER ON DEFENDANTS' MOTIONS FOR ATTORNEYS' FEES UNDER 17 U.S.C. §505
—No. C-05-03534 RMW
MEC 9

Cameron and Hurd have submitted to the court detailed accounts of their hourly rates and hours expended throughout the litigation of this case, as is required to determine a reasonable fee award. *See Hensley*, 461 U.S. at 433. They have also submitted declarations by experienced intellectual property litigators affirming the reasonableness of their hourly rates.

### 1. Cameron

Cameron seeks a fee award in the amount of $100,677.50. The court finds that this amount of attorney's fees is reasonable. The hourly rates charged by counsel for Cameron are reasonable as well as the number of hours expended in connection with litigation of the case.

#### A. Reasonable Hourly Rate

Cameron bases his requested fee award amount upon hours of work performed by three attorneys from Greenberg Glusker from 2006-2009 at their then hourly billing rates. Namely, Cameron seeks attorneys' fees for 170.25 hours of work performed by the primary attorney in this matter, Charles Shephard, from 2006 to 2009; 21.25 hours performed by Ken Basin in 2008 and 2009, and 11 hours performed by Cambra Sklarz in 2009. Shephard's hourly rate billing rate was $495 in 2006; $510 in 2007; and $550 in 2008 and 2009. Shephard Decl. ¶ 18. Ken Basin's hourly billing rate at the time he rendered services to Cameron was $ 275, and Cambra Sklarz's hourly billing rate at the time she rendered services to Cameron was $ 340. Shephard Decl. ¶ 19.

Cameron has submitted copies of itemized bills from Greenberg Glusker detailing services rendered in defending Cameron in this matter. In addition, Cameron's counsel submitted the declaration of an experienced attorney practicing intellectual property and entertainment law in California which confirms that the hourly rates of the three Greenberg Glusker attorneys are "well within the range" of standard hourly billing rates for lawyers in California handling entertainment and intellectual property litigation. Barry West Decl. ¶¶ 2, 3, 6. Several California attorneys charge hourly rates in the $600-$900 dollar range, well above the Greenberg Glusker attorneys' rates. See Exh. "H" to Def. Cameron's mot.

Cameron has put forth substantial evidence to support a finding that his counsel charged a reasonable hourly rate for services rendered in connection to this lawsuit during the period for which he requests attorneys' fees.

### B. Reasonable Number of Hours Expended on Defense

Cameron seeks attorneys' fees for 202.5 hours of work performed by his attorneys in connection with this case. Cameron's attorneys litigated the case from 2006-2009, contributing to the ninety-nine total pleadings filed, making multiple court appearances in Northern California, and performing all other tasks associated with defending the case. This number of hours includes time spent "addressing improper discovery sought by plaintiff" and attending a hearing on a motion for summary judgment in San Jose, only to find the plaintiff requesting a continuance to retain new counsel. Upon considering the substantial number of hours necessarily devoted to the litigation of this case and to addressing delays created by plaintiff, the court finds that the 202.5 hours which Cameron's counsel expended in defense of this case is a reasonable number of hours.

### 2. Hurd

Hurd requests $244,077.75[2] in attorneys' fees incurred through April 15, 2011, an additional $4,140 for estimated fees for this motion, and $4,760.25 in costs pursuant to the Bill of Costs filed with defendant Hurd's motion for attorneys' fees, for a total amount of $252,978. The court makes minimal adjustments to Hurd's calculated amount, reducing the number of hours reasonably spent in connection with this motion, and leaving costs to be awarded separately. The court therefore awards attorneys' fees in the amount of $244,077.75 for fees incurred through April 15, 2011, and an additional $2,760 for hours incurred in connection with this motion, for a grand total of $246,837.75.

### A. Reasonable Hourly Rate

Hurd requests fees for work performed by attorneys at Wyman & Isaacs LLP in litigating this case from 2006 to the present. In 2006, Bruce Issaacs, the primary attorney on the case, charged an hourly rate of $415, but agreed to defend the action at an initial hourly rate of $300, later

---

[2] On pages 10 to 11 of Hurd's motion, Hurd sets forth a detailed account of the amount of attorney's fees incurred through April 15, 2011, with the grand total appearing as $244,837.75. Hurd Defs.' mot. 10-11. This amount also appears in paragraph six of the Declaration of Bruce Isaacs. Bruce Isaacs Decl. ¶ 6. This amount appears nowhere else in Hurd's papers, and is approximately $800 higher than the actual requested amount of attorneys' fees. Hurd in fact requests the lower amount in fees, $244, 077.75, references the lower amount throughout Hurd's motion, and the lower amount appears as the total in Exhibit "1" to Hurd's motion. Therefore, the court disregards the $244,837.75 figure and awards $244,077.75 for fees incurred through April 15, 2011.

1  increased to $345.  From 2006 to September 2009, David Boren also worked on the case at an
2  hourly rate of $275.  Janna Smith also did some work on the case at an hourly rate of $225.  Bruce
3  Isaacs Decl. ¶ 5.

4  As with respect to the hourly rate of Cameron's attorneys, the hourly rates of the Wyman &
5  Isaacs attorneys are reasonable and within the range of rates charged by attorneys practicing
6  intellectual property and entertainment law in California.  Hurd submitted the declaration of an
7  intellectual property attorney who charges $925 an hour.  The reduced rates at which Isaacs charged
8  Hurd were easily within and even below the prevailing market rates for the defense of a copyright
9  infringement action of this nature in California.

### B. Reasonable Number of Hours Expended on Defense

Though Hurd's motion did not directly state an aggregate amount of hours expended in defending this case, the motion was supplemented with copies of itemized billing statements from November 2006 to April 15, 2011 which serve as a detailed account of the hours expended.  See Exh. "2" to Def. Hurd's mot.  Additionally, Hurd submitted an order granting the motion for attorneys' fees in another case, lasting less than two years, where Hurd was forced to defend against another copyright infringement claim relating to the Terminator Franchise.  See Exh. "5" to Def. Hurd's mot.  In that case, Hurd was awarded attorney's fees in the amount of $305,000.

The parties litigated this case for over four years, resulting in extensive pleading, filing, correspondence, and other duties associated with litigation of a copyright infringement claim. Additionally, Hurd was forced to pay attorneys' fees to continue defending against Goldberg's arguments based on alleged infringement of T-1 and T-2, which were no longer at issue after February 2007. Finally, Goldberg's litigation tactics and failure to do things on time contributed to the number of hours Hurd's attorneys spent litigating this case.  As Hurd was awarded $305,000 in attorneys' fees for hours expended successfully litigating a two-year copyright infringement case, it is clearly reasonable to award $247,077.75 in attorneys' fees in this case, which lasted twice as long. The amount of hours which Hurd's counsel expended in defending this case is reasonable.

The court reduces the fee award by $1,380, which translates to four hours at Isaac's hourly rate of $345, due to the fact that defendants were not required to reply to any opposition in

ORDER ON DEFENDANTS' MOTIONS FOR ATTORNEYS' FEES UNDER 17 U.S.C. §505
—No. C-05-03534 RMW
MEC                                           12

connection with this motion, as Goldberg did not file written opposition to either motion for attorneys' fees. Isaacs Decl. ¶ 8. Thus, the twelve hours Isaacs allotted to working on this motion was an overestimate, and has been reduced to eight hours. The court therefore awards Hurd $247,077.75 in fees incurred through April 15, 2011 and $2,760 in fees incurred for time spent on this motion, for a total award in the amount of $249,837.75, costs to be addressed separates from attorneys' fee awards.

### III. ORDER

For the foregoing reasons, the court grants defendants' motions for attorneys' fees. It is hereby ordered that:

1) Defendant Cameron's motion for attorneys' fees is granted. The court awards attorneys' fees in the amount of $100,677.50.

2) Defendant Hurd's motion for attorneys' fees is granted. The court awards attorneys' fees in the amount of $249,837.75.

DATED: 8/11/2011

RONALD M. WHYTE
United States District Judge